**Francine KLINGMAN, Plaintiff,**

v.

**Melvin E. LEVINSON, Defendant,**

v.

**Muriel B. LEVINSON, United States of America, Intervenors.**

**No. 80 C 2305.**

United States District Court, N.D. Illinois, E.D.

Aug. 18, 1993.

Lionel I. Brazen, Manuel Rosenstein, Chicago, IL, Seth G. Heald, U.S. Dept. of Justice, Washington, D.C., for plaintiff.

Abraham Brustein, Thomas G. Jaros, Smith, Williams & Lodge, Chicago, IL, for intervenor Muriel B. Levinson.

Craig Arthur Oswald, U.S. Atty. Office, Chicago, IL, John A. Lindquist, III, Seth G. Heald, U.S. Dept. of Justice, Washington, D.C., for U.S.

Melvin E. Levinson, Wilmette, IL, for defendant.

## MEMORANDUM, OPINION & ORDER

MORAN, Chief Judge.

This matter is before the court on defendant Melvin E. Levinson's and intervenor Muriel B. Levinson's motions for summary judgment against plaintiff Francine Klingman and the United States. For the reasons stated herein, the motions are denied.

### BACKGROUND

Between approximately 1966 and 1969, defendant Melvin E. Levinson, an attorney, embezzled money from his clients. Levinson was caught, disbarred, convicted, and served time. *See People v. Levinson*, 75 Ill.App.3d 429, 31 Ill.Dec. 307, 394 N.E.2d 509 (1st Dist.1979), *cert. denied*, 449 U.S. 992, 101 S.Ct. 527, 66 L.Ed.2d 288 (1980); *In re Levinson*, No. 45360, Illinois Supreme Court (September 26, 1973).

Plaintiff Francine Klingman is one of Levinson's former clients. In 1967, Klingman and Levinson entered into a trust agreement which named Levinson as trustee. Three years later, Klingman sued Levinson in the Circuit Court of Cook County claiming that Levinson had misappropriated the trust's assets. The parties ultimately settled the case under terms set forth in an Agreed Order entered on April 11, 1975. In the Agreed Order, Levinson admitted to embezzling the trust's assets and agreed to pay Klingman approximately $62,000, representing the original amount of the trust corpus, plus interest and attorney fees. Levinson has yet to pay a penny.

In an effort to collect her money, Klingman filed this supplemental action in 1976 in the Circuit Court of Cook County under Ill.Rev.Stat. ch. 110, § 73. Citations to discover assets were issued and directed to Levinson and to the American National Bank and Trust Company. Those citations are still in force. Responses to the citations revealed that Levinson and his wife, Muriel B. Levinson, were the beneficiaries of an Illinois land trust created in 1960. The trust corpus is their family home in Wilmette.

At this point, Muriel Levinson intervened in the action, claiming that Levinson conveyed his interest in the land trust to her in an assignment dated September 6, 1972. The parties dispute whether the assignment was actually executed in September 1972 and whether the assignment is effective. Under the terms of the land trust, assignments are not effective until accepted by the trustee. Melvin's assignment of his interest in the land trust to Muriel was not filed with the trustee or otherwise made public until January 1977. It is unclear whether the trustee has accepted the assignment. Klingman seeks to have Melvin's assignment of his interest in the land trust set aside as a fraudulent conveyance under Illinois law.

In the meantime, the Government also has been pursuing Levinson. The IRS assessed income tax deficiencies against Levinson for his failure to pay income tax on the funds he had embezzled during 1966 through 1969. Levinson brought a petition in tax court, challenging the deficiencies for the years 1966 through 1968. A settlement was reached in 1978 in which Levinson agreed to pay $74,815.27. The 1969 deficiency was not challenged and the United States brought suit to reduce the assessment to judgment. In February 1981, that action was settled and Levinson agreed to pay $44,840.23. *Levinson v. United States*, 969 F.2d 260, 262 (7th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 505, 121 L.Ed.2d 441 (1992).

The United States intervened in Klingman's action in May 1980 and the case was removed to this court. The Government claims that it has a lien on the debtor's beneficial interest at the time of the assignment (if the assignment was made in 1977), and that Muriel took Melvin's interest subject to that lien. In the event the assignment is found to have taken place in 1972, the IRS argues that the assignment is a

fraudulent conveyance and that its tax lien is superior to Klingman's judgment lien.

On April 22, 1982—one week before this action was to be tried—Levinson filed a bankruptcy petition. During the course of the bankruptcy proceedings, Levinson's debt to Klingman was held to be nondischargeable. *Klingman v. Levinson*, 831 F.2d 1292 (7th Cir.1987), *aff'g*, 66 B.R. 548 (N.D.Ill.1986); *aff'g*, 58 B.R. 831 (Bankr. N.D.Ill.1986); *see also Klingman v. Levinson*, 877 F.2d 1357 (7th Cir.1989). Likewise, Levinson's tax debts for the years 1966–69 were found to be nondischargeable. *Levinson v. U.S.*, 969 F.2d 260 (7th Cir.1992).

As a result of the bankruptcy, this case was stayed and then removed to the Bankruptcy Court. Judge Ginsberg remanded the case to this court upon his determination that the bankruptcy court lacked jurisdiction over this dispute. *See Levinson v. United States*, No. 82 B. 5309, Adv. No. 1432 (Bankr.N.D.Ill.), April 18, 1990 Memorandum Opinion and Order at 5 n. 5. The parties agree that the bankruptcy trustee never sought to recover the land trust interest conveyed by Melvin to Muriel which is at issue here.

Melvin and Muriel make two basic arguments in support of their summary judgment motions. First, they contend that both Klingman and the United States lack standing to pursue this fraudulent conveyance action because once Melvin filed his bankruptcy petition, the allegedly fraudulently conveyed property became part of the debtor's estate, and only the trustee has standing to assert this cause of action.

Second, they argue that the United States is collaterally estopped from arguing that Melvin's assignment of his interest in the land trust to Muriel was a fraudulent conveyance because that issue already has been litigated in the adversary proceeding before Judge Ginsberg.

## DISCUSSION

### I. Standing.

The Levinsons' basic position is that once Melvin filed his petition in bankruptcy, the trustee became vested with the exclusive right to pursue this action because fraudulently conveyed property is "property of the estate" under 11 U.S.C. § 541. They contend that Klingman and the United States are barred from pursuing their fraudulent conveyance claims.

The leading case in support of the Levinsons' argument is *In re MortgageAmerica Corp.*, 714 F.2d 1266, 1275 (5th Cir.1983). In *MortgageAmerica*, a creditor initiated a state court suit in Texas prior to the bankruptcy petition, asserting causes of action based on allegedly fraudulent property transfers. The Fifth Circuit held that the debtor continued to have a "legal or equitable interest" in property fraudulently conveyed under § 541(a)(1) of the Bankruptcy Code. As a result, the Court concluded that the property, even in the hands of a third party, is property of the estate.

Other courts have rejected that view, holding that a fraudulently conveyed asset does not become property of the estate until it is recovered by the trustee. *See, e.g., In re Colonial Realty Co.*, 980 F.2d 125, 130–31 (2d Cir.1992); *In re Saunders*, 101 B.R. 303, 304–05 (Bankr.N.D.Fla.1989). The court finds the analysis employed in *Colonial* and *Saunders* more persuasive.

Under § 541(a)(3), "property of the estate" is defined as "any interest in property that the trustee recovers" under enumerated Bankruptcy Code provisions, including § 550. Section 550 allows the trustee to recover fraudulently transferred property for the benefit of the estate to the extent that a transfer is avoided as fraudulent under either §§ 544 or 548. Under the *MortgageAmerica* analysis, fraudulently conveyed property becomes property of the estate under § 541(a)(1) because it is property in which the debtor has a "legal or equitable interest." However, as the court observed in *Saunders*:

If property that has been fraudulently transferred is included in the § 541(a)(1) definition of property of the estate, then § 541(a)(3) is rendered meaningless with respect to property recovered pursuant to fraudulent transfer actions. We think that the inclusion of property recovered by the trustee pursuant to his avoidance powers in a separate definitional subparagraph clearly reflects the congressional

intent that such property is not to be considered property of the estate until it is recovered.

*Saunders,* 101 B.R. at 305, *quoted in Colonial,* 980 F.2d at 131; *cf. In re McDonald Bros. Constr., Inc.,* 114 B.R. 989, 997 (Bankr.N.D.Ill.1990) ("It is the recovery of funds involved in an "avoided" transfer, not the potential for recovery, that causes funds to be considered part of the estate").

■ The Court adopts the analysis of *Colonial* and *Saunders* and holds that fraudulently transferred property does not become property of the bankruptcy estate until there has been a judicial determination that the property was fraudulently transferred.[1]

■ This holding should not be construed as suggesting that creditors may vie with the bankruptcy trustee for the right to pursue fraudulent conveyance actions. To the contrary, the commencement of bankruptcy gives the trustee the right to pursue fraudulently conveyed assets to the exclusion of all creditors. 11 U.S.C. § 546(a). However, the trustee does not retain this exclusive right in perpetuity. The trustee's exclusive right to maintain a fraudulent conveyance cause of action expires and creditors may step in (or resume actions) when the trustee no longer has a viable cause of action. *Kathy B. Enterprises, Inc. v. United States,* 779 F.2d 1413, 1415 (9th Cir.1986) (IRS entitled to

pursue collection action after bankruptcy closed); *Federal Deposit Insurance Corp.,* 733 F.2d 1083, 1085 (4th Cir.1984) ("once a bankruptcy case has been closed, creditors having unavoided liens on fraudulently conveyed property can pursue their state law remedies independently of the trustee in bankruptcy"); *Dixon v. Bennett,* 72 Md. App. 620, 531 A.2d 1318, 1323–25 (1987) ("once a trustee's statutory time period has expired, an unsecured creditor can bring an action against a fraudulent transferee under state law provided the state statute of limitations has not yet expired"), *cert. denied,* 311 Md. 557, 536 A.2d 664 (1988).[2]

■ Here, there is no dispute that the trustee never sought to recover the conveyance challenged by Klingman and the United States. The statute of limitations has long since run on the trustee's right to bring that action. The court finds that Klingman and the United States have standing to pursue their claims in this action.[3]

## II. Collateral Estoppel.

Melvin and Muriel Levinson also seek to bar the United States from relitigating the issue of whether Melvin's assignment to Muriel of his interest in the land trust was a fraudulent conveyance. They argue that the United States already litigated and lost the fraudulent conveyance issue in an ad-

---

1. The Levinsons also argue that the cause of action to recover fraudulently conveyed property is also "property of the estate." Property of the estate includes causes of action belonging to the debtor, *see United States v. Whiting Pools,* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). However, a "fraudulent transfer cause of action itself is not considered property of the estate since the avoidance of such a transfer is not a cause of action assertable by the debtor." *In re Saunders,* 101 B.R. 303, 305 (Bankr. N.D.Fla.1989). To the contrary, only a bankruptcy trustee (or a creditor if there is no bankruptcy) can assert a fraudulent conveyance cause of action. *Id.*

2. The cases cited by Melvin and Muriel involve conflicts between the bankruptcy trustee and the creditors as to who has the right to set aside the fraudulent conveyance. There is no similar conflict posed here. Thus, this case does not implicate the bankruptcy policies of orderly liq-

uidation and equality among creditors. Under today's holding, a creditor's cause of action to set aside a fraudulent conveyance is subject to being taken over and pursued by the trustee once the bankruptcy petition is filed until the trustee's right to bring suit expires.

Melvin also claims that Klingman and the United States are not entitled to any recovery because they "traded that right away for a non-dischargeable order." Melvin cites no authority in support of this "trade-off" theory and the Court has found none.

3. The trustee's right to bring an action to recover a fraudulent conveyance is subject to the time limitations of 11 U.S.C. § 546(a), which limits the trustee to the earlier of two years after his appointment or the time the case is closed or dismissed. It appears from the docket that the trustee was appointed in June 1982 and that Melvin's bankruptcy was closed in October 1988.

**114**

versary proceeding before the Bankruptcy Court. *Levinson v. United States*, No. 82 B 05309, Adv. No. 85 A 1432 (Bankr. N.D.Ill.), April 18, 1990 Memorandum Opinion and Order (hereinafter "4/18/90 Order").

In the adversary proceeding before Judge Ginsberg, the United States argued that Melvin's tax debts for the years 1966 through 1969, 1973, 1975, 1977, and 1978 were nondischargeable because (1) Melvin filed fraudulent returns for each of those years, and (2) Melvin's assignment of his interest to Muriel of his land trust interest demonstrated a willful intent to defeat or evade the payment of taxes. 4/18/90 Order at 9. Judge Ginsberg agreed that Melvin had filed fraudulent returns for the 1966 through 1969 tax years and held those debts nondischargeable. 4/18/90 Order at 13. However, Judge Ginsberg found that the United States failed to prove by clear and convincing evidence that the returns for the remaining tax years were fraudulent or that Melvin willfully attempted to evade or defeat the payment of his tax debts by assigning his interest in the land trust to Muriel. *Id.* at 13–14, 25. Accordingly, he held that Melvin's tax debts for the years 1973, 1975, 1977, and 1978 were discharged. *Id.* at 25.

▮▮▮ Collateral estoppel or issue preclusion bars a party from relitigating the same issues in different causes of action. *Barnett v. Stern*, 909 F.2d 973, 977 n. 5 (7th Cir.1990). Four requirements must be met for the doctrine to apply: (1) the issue sought to be precluded must be the same as that involved in the prior action; (2) the issue must have been actually litigated; (3) the determination of the issue must have been essential to the final judgment, and (4) the party against whom estoppel is invoked must be fully represented in the prior action. *Klingman v. Levinson*, 831 F.2d 1292, 1295 (7th Cir.1987).

▮▮▮ The first requirement is not satisfied here. The issue before Judge Gins-

berg was whether Melvin had "willfully attempted to evade or defeat the payment of his tax debts by transferring the beneficial interest in the land trust to his wife." 4/18/90 Order at 16. That is not the same issue presented here. It is well established that under Illinois law, a conveyance may be deemed fraudulent and set aside without any showing of intent at all.[4] *United States v. Brown*, 820 F.Supp. 374, 383 (N.D.Ill.1993). Indeed, Judge Ginsberg emphasized the distinction between the issue before him and the fraudulent conveyance issue that is before this court (4/18/90 Order at 15–16):

> At the outset, it is important to note that the court does not now have before it the question of whether the conveyance of the beneficial interest in the land trust to the debtor's wife should be set aside. That question is currently pending before the district court in a separate proceeding in which both the IRS and Klingman assert the conveyance should be set aside for their respective benefit. The reason this court does not have to reach the question of whether the conveyance can be set aside is that under Illinois law applicable to the transfer in question, a conveyance by an insolvent debtor may be set aside without a showing of actual intent to hinder, delay, or defraud any creditor on the party of the debtor.... Thus even if the transfer of the beneficial interest in the land trust to his wife is voidable under applicable Illinois fraudulent conveyance doctrine, the conclusion does not necessarily follow that the tax debts the debtor owes are nondischargeable.

*See also Fink v. Graven*, 138 B.R. 587, 589 (Bankr.W.D.Mo.1992) (bankruptcy court's order finding that the debtor committed fraud did not collaterally estop the debtor from defending against trustee's fraudulent conveyance action).

▮▮▮ Moreover, as the United States correctly points out, Judge Ginsberg held the United States to a "clear and convincing"

---

**4.** Although Judge Ginsberg held that there was consideration for the transfer, he explicitly refused to consider "if the consideration was suffi-

cient in value terms to support the transfer." 4/18/90 Order at 22 and n. 16.

burden of proof in the adversary proceeding. Here, the government need only meet a preponderance of the evidence standard to set aside Melvin's transfer to Muriel. *In re Martin*, 124 B.R. 69, 73 (Bankr.N.D.Ill. 1991). It is well established that issue preclusion does not apply where the party against whom preclusion is sought faced a heavier burden of persuasion in the first action than in the subsequent action. *Guenther v. Holmgreen*, 738 F.2d 879, 888 (7th Cir.1984), *cert. denied*, 469 U.S. 1212, 105 S.Ct. 1182, 84 L.Ed.2d 329 (1985); Restatement (Second) of Judgments § 28(4).

 In addition, the United States did not have a full and fair opportunity to litigate the fraudulent conveyance issue before Judge Ginsberg. *See Barnett v. Stern*, 909 F.2d 973, 978 n. 7 (7th Cir.1990). Judge Ginsberg emphasized during the course of the adversary proceeding that he was not considering the fraudulent conveyance issue because he had no jurisdiction over the dispute. *See* 4/18/90 Order at 5 n. 5, 26–28 and n. 20.[5] Moreover, Judge Ginsberg refused to allow Francine Klingman to intervene in the adversary action because all the parties, including Melvin Levinson, had agreed that there would be no collateral estoppel effect on the fraudulent conveyance action. *See Levinson v. United States*, No. 82 B 05309, Adv. No. 85 A 1432, Sept. 1, 1987 Tr. at 12, 14. Even though parties cannot agree to the future res judicata or collateral estoppel effect of judgments, under the circumstances present here, it would fundamentally unfair to use the proceedings before Judge Ginsberg to bar the United States from litigating the fraudulent conveyance action here.

It bears noting that neither Melvin nor Muriel Levinson contend that Klingman is collaterally estopped from litigating the fraudulent conveyance action. Nor could they because Klingman was not a party to the adversary proceeding. As a result, a ruling either way on this issue would not make the slightest difference in the issues to be presented at trial.

### CONCLUSION

For the foregoing reasons, defendant Melvin E. Levinson's and intervenor Muriel B. Levinson's motions for summary judgment are denied.

---

5. For this reason, Melvin's attempts to invoke res judicata are also unavailing. By definition, res judicata, or claim preclusion, bars only those grounds for recovery that could have been asserted in the prior litigation. *Levinson v. United States*, 969 F.2d 260, 262 (7th Cir.), *cert.* *denied*, —— U.S. ——, 113 S.Ct. 505, 121 L.Ed.2d 441 (1992). Because the bankruptcy court was without jurisdiction over the fraudulent conveyance issue, it was not a ground for recovery previously available to the parties. *See* Restatement (Second) of Judgments § 26(1)(c).