**In re Alan VANDEWOESTYNE and Jerilyn Vandewoestyne, Debtors.**

**In re Brett VANDEWOESTYNE, Debtor.**

**Leroy V. HAVEL and Robert N. Havel, Partners, d/b/a H & H Order Buyers, Plaintiffs,**

v.

**Alan VANDEWOESTYNE and Brett Vandewoestyne, Defendants.**

**Bankruptcy Nos. 93–80358, 93–80550. Adv. Nos. 93–8137, 93–8144.**

United States Bankruptcy Court, C.D. Illinois.

Nov. 15, 1994.

Barry M. Barash, Barash & Stoerzbach, Galesburg, IL, for plaintiffs.

Gregg N. Grimsley, Vonachen, Lawless, Trager & Slevin, Peoria, IL, for defendants.

## OPINION

WILLIAM V. ALTENBERGER, Chief Judge.

The issue before the Court is whether the Debtors' discharges should be denied pursuant to § 727(a)(3) of the Bankruptcy Code for failure to keep or preserve records, 11 U.S.C. § 727(a)(3). The Debtor, Alan Vandewoestyne, was in the business of buying and

selling hogs (BUSINESS). His son, Brett Vandewoestyne, also a Debtor, participated in the operation of the BUSINESS.[1] The nature and extent of that participation in the context of § 727 is also at issue. The Plaintiffs were in the hog and trucking business and would sell or buy hogs to or from the BUSINESS. The delivery and pick up of hogs could occur at odd hours of the day. When the Plaintiffs delivered hogs they would supply a shipping invoice. With an exception for transactions involving the Plaintiffs, invoices with the BUSINESS's letterhead would be issued whenever hogs were bought or sold through the BUSINESS. These BUSINESS invoices were the backbone of the BUSINESS records. Checking account records, a register of transactions, and scale weight tickets which usually were attached to each invoice, were also maintained for the BUSINESS.

The Debtors filed separate Chapter 7 proceedings in bankruptcy. At that time there was owed to the Plaintiffs a sum in excess of $500,000.00. The Plaintiffs filed two adversary actions under § 727(a)(3), one in each bankruptcy, which were consolidated for trial purposes.

Section 727(a)(3) of the Bankruptcy Code provides a discharge will not be granted where the debtor has

"failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case."

In discussing § 727(a)(3), 4 *Collier on Bankruptcy*, para. 727.03[1] states:

Although it has been stated generally, in issues raised on objections to discharge, that the law should be resolved in favor of the debtor such a statement should be qualified by noting that the interests protected by section 727 "are those of creditors and that the [debtor] is required to take such steps as ordinary fair dealing

---

**1.** For the purposes of this Opinion the Debtors shall be jointly referred to as "Debtors", and individually as "Alan" or "Brett".

and common caution dictate to enable the creditors to learn what he did with his estate." Within the broad language of this provision, as defined by the exercise of a sound judicial discretion, if the facts disclose a breach of the debtor's duty to creditors to keep or preserve proper books or records and he fails to establish facts and circumstances in justification thereof, a discharge should be denied.

The requirement is imposed to enable creditors, with the assistance of proper books and records, to ascertain the true status of the debtor's affairs and to test the completeness of the disclosure requisite to a discharge.

As the court stated in the case of *In re Underhill*, decided under the Act:

> "The purpose and intent of section 14b of the Bankruptcy Act [now section 727 of the Bankruptcy Code] is to make the privilege of discharge dependent on a true presentation of the debtor's financial affairs. It was never intended that a bankrupt, after failure, should be excused from his indebtedness without showing an honest effort to reflect his entire business and not a part merely."
> (Footnotes omitted.)

1 *Ginsberg on Bankruptcy*, § 11.02[d] states: [2]

> A discharge can be denied on the ground that the debtor has failed to keep or produce adequate books and records. A debtor has an obligation to keep and produce books and records sufficient for the court, creditors, and trustee to be able to construct an accurate picture of the debtor's financial history. If the debtor cannot produce adequate books and records, the debtor can get a discharge only by justifying the lack of proper books and records.
>
> . . . .
>
> The determination of whether books and records are adequate often depends on the nature of the business in which the debtor was engaged. In general, records are regarded as sufficient when they show the debtor's past and present financial condition with a fair degree of accuracy, and

identify business transactions sufficiently to enable the court, creditors, and trustee to trace the debtor's financial dealings and to evaluate other evidence and testimony about the debtor's financial condition and history. . . .

The books and records provision relates closely to the debtor's duty to explain losses. Therefore, books and records are generally sufficient when they show what the debtor had, what the debtor has, what the debtor owes, and where the money went.

The "books and records" ground is generally used only with debtors who have been engaged in business; it is rarely used against consumer debtors. With business debtors, less is generally expected from a small business than from a large business. A debtor involved in a small business of little complexity probably needs to have no records whatsoever. Note, however, that the court will also look at the debtor individually as well as the nature of the business, and as the debtor's financial sophistication increases, so does the expectation as to the condition of the books and records. Evidence of intentional failure to keep records is particularly harmful to the debtor.

The Plaintiffs argue that as the Debtors operated a business which was subject to the licensing requirements of the federal and state statutes, the records must comply with applicable federal and state statutes, and as the records failed to comply, inadequate records were kept and preserved. On the federal level, 7 U.S.C. § 221 provides in part as follows:

> Every packer or any live poultry dealer or handler, stockyard owner, market agency, and dealer shall keep such accounts, records, and memoranda as fully and correctly disclose all transactions involved in his business, including the true ownership of such business by stockholding or otherwise.

On the state level, 225 ILCS 645/17 provides in part as follows:

> Each licensee shall maintain records of each purchase under this Act including identification of livestock purchased, the

**2.** Footnotes are omitted.

name and address of the seller, and the date of purchase, and a record of each sale, including date, buyer, number and identification of animals.

■ Where debtors have failed to meet statutory requirements for record maintenance, their discharges have been denied. *See Rhoades v. Wikle,* 453 F.2d 51 (9th Cir. 1971); *In re Wiess,* 132 B.R. 588 (Bkrtcy. E.D.Ark.1991); *In re Sherman,* 24 B.R. 507 (Bkrtcy.E.D.Pa.1982). However, the failure to maintain statutorily mandated records is not a *per se* violation of § 727(a)(3). It is a factor to consider in determining if a debtor's books and records are sufficient to permit an accurate determination of a debtor's financial condition.

■ The requirements of the federal and state statutes are "transactional" orientated. The requirements of § 727(a)(3) go further, and as *Ginsberg* points out, require a showing of

> "the debtor's past and present financial condition with a fair degree of accuracy *and* identify business transactions sufficiently to enable the court, creditors, and trustee to trace the debtor's financial dealings and to evaluate other evidence and testimony about the debtor's financial condition and history." (Emphasis added.)

While the BUSINESS's books and records do reflect some aspects of purchase and sale transactions, they do not show past and present financial condition. There are no records showing capital position or expenses. Without records showing capital position, income, and expenses, it is impossible for creditors to evaluate a financial condition and history.

The Debtors are overly charitable when they argue the BUSINESS's books and records included "monthly profit and loss statements, balance sheets prepared by the De-

fendants' accountants." (Defendants' Ex. # 6) All these amount to is a register of transactions with a balancing summary. They are a far cry from what is normally expected in the way of profit and loss statements or balance sheets. They reflect the transactional aspects of the BUSINESS and not its financial condition.

But these books and records are insufficient even as to transactions of the BUSINESS. This is where the federal and state statutes need to be considered. While it is true that these federal and state statutes and § 727 have different ultimate purposes,[3] it is equally true that these federal and state statutes contain requirements for record standards for transactions engaged in by buyers and sellers of livestock.

The record keeping standard under the state statute is somewhat specific, while the standard under the federal statute is general in nature. A comparison of the specific requirements of the state statute to the records produced at trial reveals that the Debtor's records do not comply with that statute. The requirements under the state statute are slightly different for purchases and sales. Debtors' exhibits 4 and 5 are the only records pertaining to purchases. They fail to meet the requirements of the state statute as to purchases as they do not contain any addresses of the sellers, and as to the Plaintiffs, contain no record of purchases from the Plaintiffs. Nor do the Debtors' records meet the requirements of the federal statute, as they do not reflect purchases from the Plaintiffs. Without meaningful books and records which show all sellers and their addresses where they could be located, the goal of tracing, confirming and evaluating purchase transactions could not be achieved.

---

3. In *Hyatt v. United States,* 276 F.2d 308 (10th Cir.1960), a case involving a proceeding brought by the Department of Agriculture against a livestock dealer for failure to keep accurate records, the court stated:

> One of the important and essential means in the accomplishment of the purposes of the Packers and Stockyards Act is to require market agencies to keep such accounts, records and memoranda as will fully and correctly disclose all transactions involved in their han-

dling of livestock. As was indicated in *Interstate Commerce Comm. v. Goodrich Transit Co.,* 224 U.S. 194, 32 S.Ct. 436, 56 L.Ed. 729, if an administrative agency is to perform successfully its duties in respect to reasonable rates, undue discriminations and favoritism, it must be informed as to the business of those subject to regulation, and their records must fully and correctly disclose the transactions in which they engage.

One of the Plaintiffs, Leroy Havel, testified he left an invoice for 90% of the deliveries and when he failed to do so he would telephone the information to the Debtors. Alan testified that the Plaintiffs rarely ever gave him information regarding deliveries from the Plaintiff and that he never received invoices from the Plaintiffs. Whether the Plaintiff did or did not supply invoices or information is irrelevant. Under both the federal and state statutes and § 727 of the Bankruptcy Code, the record keeping responsibility is placed on the licensee/debtor and not on those who do business with him. If as Alan testified he did not receive information from the Plaintiffs, there was an obligation to take steps to construct books and records from available information.[4] If it was supplied it should have been kept.

At trial, Alan testified he was working hard, the business was losing money, and he just didn't know what was going on, and the Debtors offered "samples" of the available books and records. They claim to have all bank statements, cancelled checks and deposit tickets, all records of purchases of hogs—except for the Plaintiffs' hogs, and financial statements prepared by the Debtors' accountants. As the Debtors state in the first paragraph of their post-trial brief:

At trial, Defendants introduced their records, which had been made available to Plaintiffs. This included a complete set of bank records, monthly profit and loss statements, balance sheets prepared by the Defendants' accountant, and income tax returns. These records were produced for that period of time that commenced with the parties' business relationship to the date the business closed.

█ The difficulty with this position is that courts have held that "too many" is just as bad as "not enough". The court in *In re Frommann*, 153 B.R. 113 (Bkrtcy.E.D.N.Y. 1993) reasoned:

In the case before this Court, the records produced by the Debtor are not sufficient to enable the Trustee to ascertain her financial condition. The Debtor provided the Trustee with a carton of records consisting of bills, checks, bank statements, and closing statements with respect to sales or real estate properties. The Debtor maintains that these written records readily establish her financial condition. However, a debtor cannot simply place sacks of records before the bankruptcy judge or trustee and request the judge or trustee to sift through the documents and attempt to reconstruct the flow of the debtor's assets. The records must "be such as to allow the Trustee, the creditors, and the court to meaningfully reconstruct the debtor's financial status." The debtor bears the burden of retaining comprehensible records. The trustee should not be required to sift through voluminous scraps of paper in order to trace assets. (Citations omitted.)

[H]owever informal the record keeping, the financial history of a debtor must be preserved in enough of a paper trail so that those concerned ... need not be experienced explorers of a rat's nest of scraps of uncoordinated bits and pieces like parts of some impressionistic puzzle that needs to be solved in order to decipher the financial machinations of the debtor.

*[In re] Morando*, 116 B.R. [14] at 16 [ (Bankr.D.Mass.1990) ].

In addition, the production of the particular types of documents submitted by the Debtor are insufficient to enable the Trustee to determine the Debtor's financial condition. *[In re] Goldstein*, 123 B.R. [514] at 524 [ (Bankr.E.D.Pa.1991) ]; *In re Schultz*, 71 B.R. 711 (Bankr.E.D.Pa.1987). *See [In re] Shapiro*, 59 B.R. [844] at 850 [ (Bankr.E.D.N.Y.1986) ] (check stubs and notes made on checks hold to be insufficient records); *Morando*, 116 B.R. at 15 (business account records such as check stubs, cancelled checks and bank statements held to be insufficient to document complex business transactions).

The court in *Frommann* also held that tax returns do not provide sufficient documenta-

---

4. i.e. It would have been quite simple for the Debtors to adopt a procedure whereby sellers

were sent confirmations showing the cattle they sold.

tion because they do not provide itemization of transactions.

As previously indicated, Alan testified that he really didn't know what was going on. In his deposition, Brett stated that he had no idea what happened to the business's money. If they cannot tell from their records what happened to the business, how could an independent party be able to make that determination? Furthermore, as also previously indicated the referenced profit and loss statements and balance sheets are lacking and do not provide a meaningful basis for reconstructing the BUSINESS's financial situation.

For these reasons this Court finds that the Debtor, Alan, failed to keep and preserve books and records from which his financial condition or business transactions might be ascertained and that his discharge should be denied pursuant to § 727(a)(3).

■ The next issue is whether Brett was also subject to the records requirements of § 727(a)(3). Brett's name appears on the letterhead of the purchase and sale invoices. His name is on the BUSINESS's bank account. He signed checks on that account. On occasion he would talk to the Plaintiffs about hog sales or purchases. The self-serving statements of Brett and the testimony of Alan are that Alan added Brett's name to those documents to stimulate Brett's interest in becoming a partner in the business and that Brett hauled hogs and signed checks when directed as a matter of convenience, and that he never bought hogs or priced them or made any decisions in the BUSINESS.

The Plaintiffs rely on § 16 of the Uniform Partnership Act as adopted in Illinois, which provides as follows:

(1) When a person, by words spoken or written or by conduct, represents himself, or consents to another representing him to any one, as a partner in an existing partnership or with one or more persons not actual partners, he is liable to any such person to whom such representation has been made, who has, on the faith of such representation, given credit to the actual or apparent partnership, and if he has made such representation or consented to its being made in a public manner he is liable to such person, whether the representation has or has not been made or communicated to such person so giving credit by or with the knowledge of the apparent partner making the representation or consenting to its being made.

(a) When a partnership liability results, he is liable as though he were an actual member of the partnership.

(b) When no partnership liability results, he is liable jointly with the other persons, if any, so consenting to the contract or representation as to incur liability, otherwise separately.

805 ILCS 205/16. They argue that under § 16 Brett's actions created a partnership by estoppel and that Alan's failure to maintain books and records is imputed to Brett based upon the holding in *Strang v. Bradner,* 114 U.S. 555, 5 S.Ct. 1038, 29 L.Ed. 248 (1885) that a partner's fraud can be imputed to a debtor to make a debt nondischargeable under § 17(a)(2) of the Bankruptcy Act. Brett argues that the duty to maintain records was delegated to Alan.

The difficulty with the Plaintiffs' theory is that Section 16 of the Uniform Partnership Act does not create a partnership relationship. It simply imposes liability on the person who permits the representation that he is a partner. *See In re McBee,* 714 F.2d 1316 (5th Cir.1983). The absence of a partnership relationship has two effects. First, the holding in *Strang v. Bradner, supra,* has no application as it is premised on the existence of a partnership relationship. Second, as Brett was not a partner in the BUSINESS, he had no duty to maintain the BUSINESS's books and records.

Under § 727(a)(3) Brett's discharge should be denied for failure to maintain records only if they pertained to (1) his financial condition, or (2) his business transactions. The Plaintiffs rely on the failure to maintain books and records for the BUSINESS. But the BUSINESS's books and records do not impact his personal financial condition. Nor do they impact his BUSINESS activities. The books and records impact the business transactions

of Alan, for which Brett is also liable under § 16.

As this Court finds that Brett was not a partner and had no responsibility to maintain books and records for the BUSINESS, there is no need to rule on Brett's contention he delegated record maintenance responsibility to Alan.

For these reasons, the Debtor, Alan Vandewoestyne's, discharge should be denied under § 727(a)(3), and the Debtor, Brett Vandewoestyne's discharge should issue.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

### ORDER

For the reasons set forth in the Opinion entered this day; IT IS HEREBY ORDERED that:

1. The Complaint filed by LEROY V. HAVEL and ROBERT N. HAVEL, Partners, d/b/a H & H ORDER BUYERS against ALAN VANDEWOESTYNE is hereby allowed and judgment is hereby entered against ALAN VANDEWOESTYNE and in favor of the Plaintiffs in the amount of $466,701.94, plus prejudgment interest in the amount of $86,388.55 through May 27, 1994, with interest thereafter at the rate of 5% to the date of this Order, plus costs;

2. The discharge of the Debtor, ALAN VANDEWOESTYNE, be and is hereby DENIED;

3. LEROY V. HAVEL and ROBERT N. HAVEL, Partners, d/b/a H & H ORDER BUYERS have a prepetition claim against the Debtor, BRETT VANDEWOESTYNE, for the amounts owed to them by the Debtor, ALAN VANDEWOESTYNE, as of the date the petition in bankruptcy was filed by Debtor, BRETT VANDEWOESTYNE; and

4. The Complaint filed by LEROY V. HAVEL and ROBERT N. HAVEL, Partners, d/b/a H & H ORDER BUYERS against BRETT VANDEWOESTYNE is hereby DENIED and the discharge of the Debtor, BRETT VANDEWOESTYNE, is hereby GRANTED and shall issue forthwith.