FIFTH DIVISION

No. 1-08-2998

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| LESTER MUNSON and JUDITH MUNSON, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiffs-Appellees, | ) | Cook County. |
| | ) | |
| v. | ) | No. 06 CH 3838 |
| | ) | |
| SUSAN RINKE, | ) | |
| | ) | |
| Defendant-Appellant | ) | |
| | ) | |
| | ) | |
| (James P. Whitmer, | ) | |
| | ) | |
| Defendant). | ) | Honorable |
| | ) | Mary K. Rochford, |
| | ) | Judge Presiding. |

_____JUSTICE TULLY delivered the opinion of the court.

This appeal arises from a fraudulent transfer action that was commenced by Lester and Judith Munson against Susan Rinke and her husband, James Whitmer. After a trial, the trial court entered a judgment in the amount of $38,000 against Rinke on count II, constructive fraud, of plaintiffs' complaint. On appeal, Rinke contends that: (1) the Munsons' action for fraudulent transfer was barred as a result of Whitmer's prior bankruptcy proceeding; (2) the Munsons' action was barred as a matter of law by the doctrine of *res judicata*; and (3) the trial court's decision was unsupported by the evidence and therefore made in error.

The instant action is related to a separate 1994 action where Whitmer filed a complaint alleging that the Munsons interfered with certain contracts regarding construction work to be done on Whitmer's property. Subsequently, in June 1994, the Munsons made a motion for sanctions against Whitmer pursuant to Supreme Court Rule 137. 155 Ill. 2d R. 137. After extensive litigation, the circuit court ultimately granted a permanent injunction to prohibit the construction work that was at issue on Whitmer's property. On May 14, 2001, Whitmer voluntarily dismissed his complaint and the circuit court denied the Munsons' request for sanctions. The Munsons appealed the ruling. On November 27, 2002, this court reversed the trial court's order denying the Munsons' motion for sanctions and ordered the trial court to impose sanctions upon Whitmer. Whitmer v. Munson, 335 Ill. App. 3d 501 (2002).

Subsequently, on February 19, 2003, Whitmer transferred the title of his 1994 Ford F-250 pickup truck (Ford) and his 1999 Lincoln Navigator (Lincoln) from himself to his wife, Rinke. On that same day, Rinke wrote Whitmer a $29,000 check for the purchase of the Lincoln and a $9,000 check for the purchase of the Ford. Six days later, Rinke deposited a $36,550.37 check from her individual retirement account (IRA) into her bank account to cover those two checks. On April 23, 2003, Rinke deposited funds provided by Whitmer in the amount of $36,551 into her bank account and used those funds to purchase an annuity for $36,550.37 to replace the IRA she liquidated to purchase the vehicles from Whitmer. On August 14, 2003, in accordance with the November 27, 2002, appellate court order, the trial court entered judgment in favor of the Munsons and sanctioned Whitmer in the amount of $173,253.14 in fees and costs incurred.

In October 2003, Whitmer filed for relief under chapter 11 of the United States

Bankruptcy Code. On April 28, 2005, the Munsons sought relief in the bankruptcy court pursuant to section 523(a)(6) of the United States Bankruptcy Code (11 U.S.C. §523(a)(6) (2000)), seeking a declaration of nondischargeability of the $173,253.14 judgment debt, which was granted.

On February 24, 2006, the Munsons (plaintiffs) filed a complaint for avoidance of the fraudulent transfers of the Ford and Lincoln, which is the underlying action in this appeal. The complaint claimed that the transfers of the vehicles on February 19, 2003, amounted to actual fraud or, alternatively, constructive fraud.. Plaintiffs filed their first motion for summary judgment on September 7, 2006. The motion was based upon Whitmer and Rinke's (defendants) failure to file timely and proper responses to plaintiffs' requests for admissions of facts. The trial court ultimately allowed defendants to respond to the requests, rendering the motion for summary judgment moot. Plaintiffs filed their second motion for summary judgment in November 2007, arguing that the pleadings revealed that defendants admitted the allegations demonstrating most of the "badges of fraud." The defendants subsequently responded and filed a cross-motion for summary judgment. After the matter was briefed, the trial court heard oral arguments and took the matter under consideration. On June 6, 2008, the trial court denied both plaintiffs' and defendants' motions for summary judgment in a written opinion. The written opinion rejected defendants' arguments that plaintiffs' action was barred under *res judicata* and a trial was set for September 30, 2008.

At trial, Whitmer testified that he transferred his two vehicles to Rinke because he wanted to stop driving due to health reasons and that Rinke needed the cars for her work. However, both

vehicles remained at the home shared by Whitmer and Rinke.

Rinke testified that her accountant, Dan Pickart, informed her that the withdrawal from her IRA to fund the $36,550.37 purchase of Whitmer's vehicles would cause her to incur an adverse tax penalty. Because of this, Whitmer then borrowed funds from his home equity line at Northern Trust Bank so that Rinke could refund her IRA. Rinke deposited $36,551 in her bank account and used the funds to purchase a new annuity to replace the IRA she had previously liquidated. At trial, defendants claimed that the $36,551 was a loan from Whitmer to Rinke. A document entitled "Promissory Note" was executed on April 15, 2003, between Rinke and Whitmer which indicated that Rinke promised to pay Whitmer $36,551 with no interest by paying "incoming bills due to James Whitmer/Chicago Agency until the debt is paid in full during years 2003 - 2004." Chicago Agency was a business owned solely by Whitmer. However, over the next two years, Rinke made direct payments to Northern Trust Bank to pay down a home equity line. Furthermore, Whitmer testified that he was the one who wrote the checks from Rinke's account to Northern Trust Bank and that he signed Rinke's name on the checks.

After taking the matter under consideration, the trial court stated that the plaintiffs met their burden under count II of the complaint, constructive fraud. The trial court entered a judgment against Rinke in the amount of $38,000, the established value of the vehicles at the time of the transfers. On October 7, 2008, defendants filed a motion to stay enforcement of the judgment pending appeal. The motion was granted and an order was entered staying enforcement of the judgment conditioned upon a $40,000 deposit by Rinke with the clerk of the circuit court. Rinke deposited the money and this appeal followed.

Rinke first contends that plaintiffs' action for fraudulent transfer was barred as a result of Whitmer's bankruptcy proceeding.

Rinke argues that because plaintiffs failed to file a claim in Whitmer's bankruptcy court proceeding, they waived their right to bring the instant action. Primarily, Rinke appears to argue that creditors must file a proof of claim and that a creditor who does no submit a proof of claim is unable to collect on that claim. Rinke cites In re Trammel, 197 B.R. 309 (Bankr. W.D. Ark. 1996), in support. However, Trammel does not stand for the proposition for which Rinke cites it for. Trammel involved an objection by a creditor to a debtor discharge under section 727(a) of the United States Bankruptcy Code (Code) (11 U.S.C. §727(a) (1994)). The objection was partly based on prepetition transfers of property within one year of the debtor's bankruptcy filing. Ultimately, a denial of discharge was deemed warranted. In the case at bar however, no objection to discharge was made but instead plaintiffs obtained an order determining that their judgment debt was nondischargeable under section 523 of the Code (11 U.S.C. §523 (2006)). Furthermore, the plaintiffs acknowledge that they could have brought their fraudulent transfer claims in bankruptcy court as the creditor did in Trammel. However, plaintiffs argue that their failure to do so does not bar the instant action. Trammel does not address a situation where a creditor pursued a fraudulent transfer claim outside of a bankruptcy action as is the case here.

Rinke also argues that where creditors conceal a fraudulent transfer of the debtor from the bankruptcy trustee and the trustee is prevented from bringing the fraudulent transfer action, the action is forever barred. Rinke cites Wilkens v. Simon Brothers, Inc., 731 F.2d 462 (7th Cir. 1984), in support. Wilkens, however, was a case where the United States Court of Appeals

reversed a district court's affirmance of the trial court's denial of a creditor's late claim. The case was remanded to the bankruptcy court for a determination of whether the creditor's actions evidenced an intent to hold debtor liable were sufficient to constitute a *de facto* informal filing. Wilkens, mentions that filing periods to participate in a chapter 13 plan for unsecured claims are "mandatory." Wilkens, 731 F.2d at 464. However, Wilkens did not discuss or involve fraudulent transfer actions undertaken after a bankruptcy proceeding, as was the case here.

Relevant to our analysis is Casey National Bank v. Roan, 282 Ill. App. 3d 55 (1996). In Casey, a judgment creditor brought an action that sought to set aside the debtors' transfer of property to their children as a fraudulent conveyance. This court held that the debtor's discharge of personal liability for the judgment debt after the bankruptcy proceeding did not affect the creditors' ability to bring a subsequent fraudulent transfer action in state court. The instant case involves a similar situation, except that in Casey, the creditors were allowed to pursue a subsequent fraudulent transfer action on a discharged debt whereas the plaintiffs in this case are pursuing a nondischargeable debt. However, this is a distinction which we do not find to be harmful to plaintiffs' action.

Also instructive is Klingman v. Levinson, 158 B.R. 109 (N.D. Ill. 1993). In Klingman, certain creditors sought to set aside an alleged fraudulent conveyance. The debtor moved for summary judgment, arguing that the creditors had no standing once a bankruptcy petition was filed and thus their claims were barred. However, the court held:

"[F]raudulently transferred property does not become property of the bankruptcy estate until there has been a judicial determination that the property was fraudulently transferred.

> ***. [t]he commencement of bankruptcy gives the trustee the right to pursue fraudulently conveyed assets to the exclusion of all creditors. [Citation]. However, the trustee does not retain this exclusive right in perpetuity. The trustee's exclusive right to maintain a fraudulent conveyance cause of action expires and creditors may step in (or resume actions) when the trustee no longer has a viable cause of action." Klingman, 158 B.R. at 113.

In the instant case, the bankruptcy court adjudicated plaintiffs claim to be nondischargeable. During the bankruptcy proceedings, the bankruptcy trustee was aware of the vehicle transfers and, at the time, had the exclusive right to pursue the fraudulently conveyed assets. However, the trustee ultimately did not pursue the action and therefore the plaintiffs were allowed to step in and pursue the fraudulent conveyance cause of action. Accordingly, we find that plaintiffs were not barred from pursuing this instant action based on the prior bankruptcy proceeding.

In the alternative, Rinke next contends that plaintiffs' action was barred as a matter of law by the doctrine of *res judicata*.

Under the doctrine of *res judicata*, a final judgment on the merits rendered by a court of competent jurisdiction acts as a bar to a subsequent suit between the parties involving the same cause of action. River Park, Inc. v. City of Highland Park, 184 Ill. 2d 290, 302 (1998). The following three requirements must be satisfied for the doctrine of *res judicata* to apply: (1) there was a final judgment on the merits rendered by a court of competent jurisdiction, (2) there is an identity of cause of action, and (3) there is an identity of parties or their privies. River Park, Inc., 184 Ill. 2d at 302.

1-08-2998

Rinke primarily relies on Stoll v. Gottlieb, 305 U.S. 165, 83 L. Ed. 104, 59 S. Ct. 134 (1938), arguing that the United States Supreme Court overruled the Illinois Supreme Court where it failed to apply *res judicata* to an order of discharge of a debtor. In Stoll, the bankruptcy court approved a reorganization plan for a debtor which discharged certain bonds and cancelled the guarantees attached to them. The approval provided that all creditors of the debtor be bound by the order. William Gottlieb, a creditor to the debtor who was to benefit from the guarantees, brought an action in the state court to enforce the very guarantee the bankruptcy court cancelled. Gottlieb also sought to vacate or modify the order cancelling the guarantee and filed a petition to that effect; however, the bankruptcy court subsequently denied the petition. In the state court action, the debtor defended by arguing that the orders of the bankruptcy court barred Gottlieb's action under *res judicata*. The state court rejected the debtor's argument and granted relief to Gottlieb. This court reversed and was in turn reversed by our supreme court. The United States Supreme Court subsequently reversed our supreme court (thus vacating Gottlieb's state court judgment), and found for the debtor citing the doctrine of *res judicata*.

We find Stoll to be readily distinguishable. In the instant case the fraudulent transfer claims were never raised in the bankruptcy court. The bankruptcy court in Stoll, however, specifically addressed the guarantees which Gottlieb later disputed. Furthermore, the debtor in Stoll was party to all relevant proceedings whereas Rinke was not a party to the bankruptcy proceedings but instead was the subject of the instant fraudulent transfer action. In Stoll, all requirements regarding the applicability of *res judicata* were satisfied. In the instant case, there is no identity of parties. Furthermore, there is arguably no identity of a cause of action nor a

8

relevant final judgment on the merits. For those reasons, we do not find that the doctrine of *res judicata* is applicable here.

In another alternative argument, Rinke contends that the trial court's decision was unsupported by the evidence and therefore made in error.

After reviewing Rinke's argument, it is evident that she has confused the grounds for which the trial court based its judgment. Plaintiffs' complaint consisted of two counts, with count I alleging actual fraud and count II alleging constructive fraud. The trial court explicitly stated that it entered judgment as to count II, constructive fraud, of plaintiffs' complaint and therefore did not need to consider count I. The trial court specifically relied on section 5(a)(2) of the Uniform Fraudulent Transfer Act (Act) (740 ILCS 160/5(a)(2) (West 2006)) in rendering its decision. On appeal, Rinke primarily argues that the trial court's decision was erroneous because it failed to consider certain factors listed in section 5(b) of the Act. Rinke goes into considerable detail in discussing the various factors listed under section 5(b). However, section 5(b) clearly states that the listed factors are to be considered when one is "determining actual intent under paragraph (1) of subsection (a)." 740 ILCS 160/5(b) (West 2006). The trial court did not base its decision on section 5(a)(1) regarding actual fraud, but instead on section 5(a)(2), a separate provision involving constructive fraud and unrelated to the factors listed in section 5(b). Because Rinke's argument on appeal addresses an allegation that was not considered by the trial court, we cannot consider it.

However, despite Rinke's confusion in her argument on appeal, we will briefly address the trial court's finding of constructive fraud.

1-08-2998

This court applies a manifest weight of the evidence standard in reviewing a trial court's factual findings. Loznam v. Putnam, 379 Ill. App. 3d 807, 820 (2008). A finding is against the manifest weight of the evidence "only when an opposite conclusion is apparent or when the findings appear to be unreasonable, arbitrary, or not based on the evidence." Eychaner v. Gross, 202 Ill. 2d 228, 252 (2002). Section 5(a)(2) provides that a transfer by a debtor can be fraudulent if the debtor made the transfer "without receiving a reasonable equivalent value in exchange for the transfer," and the debtor "intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due." 740 ILCS 160/5(a)(2) (West 2006).

In the instant case, there was no argument that the trial court was ordered by this court to impose Rule 137 sanctions against Whitmer in a separate action. After this court's order but prior to the trial court's imposition of actual sanctions, Whitmer and Rinke engaged in a series of arm's-length transactions. Whitmer transferred two vehicles to Rinke for consideration provided by her IRA. However, Whitmer later borrowed against his home equity line and provided funds to Rinke so that she could avoid a tax penalty by refunding the IRA she had previously liquidated. The two subsequently executed a promissory note where Rinke was to pay Whitmer back the loaned funds over the next two years with no interest. Rinke then allowed Whitmer to control her bank account to pay the promissory note. Furthermore, although the promissory note indicated that the debt was to be repaid by paying certain bills of Whitmer's company, funds were instead used to pay down Whitmer's equity line. Essentially, Whitmer incurred more debt due to these transactions, all of which occurred shortly after sanctions were ordered against Whitmer and

10

shortly prior to Whitmer declaring bankruptcy. The trial court found that, under those circumstances, constructive fraud was established under section 5(a)(2). After reviewing the circumstances, we do not find that the trial court's factual determinations and decision were against the manifest weight of the evidence. Accordingly, we find that the trial court did not err here.

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Affirmed.

TOOMIN, P.J., and FITZGERALD SMITH, J., concur.

LESTER MUNSON, and JUDITH MUNSON,

Plaintiffs-Appellees,

v.

SUSAN RINKE,

Defendant-Appellant

(James P. Whitmer,

Defendant).

No. 1-08-2998

Appellate Court of Illinois
First District, Fifth Division

NOVEMBER 20, 2009

JUSTICE TULLY delivered the opinion of the court:

TOOMIN, P.J., and, FITZGERALD SMITH, J., concur.

Appeal from the Circuit Court of Cook County

HONORABLE MARY ROCHFORD

Susan E. Rinke, pro se, 365 North Canal Street, of Chicago, Illinois.

Bradley J. Axel, Robert J. Slobig, Of Counsel, Torshen Slobig, Genden, Dragutinovich& Axel, Ltd., 105 West Adams Street, Suite 3200, of Chicago, Illinois for Defendant-Appellee