In re INTEGRATED AGRI,
INC., Debtor.

Richard E. Barber, Chapter 7 Trustee
for Integrated Agri, Inc.,
Plaintiff,

v.

Charles G. Westbay;  Michael W. Maulsby;  Kent A. Nixon;  and Steven L.
Westbay, Defendants.

Bankruptcy No. 01–84536.
Adversary No. 03–8261.

United States Bankruptcy Court,
C.D. Illinois.

Aug. 4, 2004.

Barry M. Barash, Galesburg, IL, Attorney for Kent A. Nixon.

Charles E. Covey, Peoria, IL, Attorney for Steven L. Westbay and Michael W. Maulsby.

Mark S. Carder, Kansas City, MO, Attorney for Case Corp. and Case Credit Corp.

Robert Lindstrom, Galesburg, Attorney for the trustee.

Daniel S. Alcorn, Galesburg, Attorney for Charles G. Westbay.

Richard E. Barber, Galesburg, trustee.

### *OPINION*

THOMAS L. PERKINS, Bankruptcy Judge.

Before the Court are the motions to dismiss the Complaint filed by Richard E. Barber, as Chapter 7 Trustee (TRUSTEE) for the estate of Integrated Agri, Inc. (DEBTOR), against Charles G. Westbay, Michael W. Maulsby, Kent A. Nixon, and Steven L. Westbay (collectively referred to as "DEFENDANTS"), to avoid fraudulent

transfers arising out of a cross-purchase of the DEBTOR'S stock, filed by each of the DEFENDANTS and the TRUSTEE'S motion to file an amended complaint.

### FACTUAL AND PROCEDURAL BACKGROUND

The DEBTOR is the holding company for four related debtor/corporations: Westbay Equipment Co., Acquisition No. 1, Inc., Nixon Farm Equipment, Inc., and Power Pro. Incorporated. The DEBTOR and its related corporations were farm equipment dealers in Illinois, Iowa and Missouri and operated their businesses as a single unit. On November 30, 1999, the DEBTOR'S shareholders entered into a purchase agreement whereby CHARLES G. WESTBAY, one of four stockholders, agreed to sell all of his shares of common stock in the DEBTOR to the remaining shareholders, MICHAEL W. MAULSBY, KENT A. NIXON and STEVEN L. WESTBAY, for the sum of $549,500. The agreement called for a payment of $199,500 upon its execution, and monthly payments of $7,138.89 beginning on January 30, 2000, for a period of five years, at which time any remaining balance was due. All of the payments to CHARLES G. WESTBAY, including the down payment, were made with funds advanced to the remaining shareholders by the DEBTOR.[1]

The DEBTOR and its related corporations filed separate Chapter 11 petitions on October 23, 2001. The schedules filed by the DEBTOR did not list any loans to shareholders as assets or property of the DEBTOR, and no amendment was filed to subsequently schedule any such loans. The case was converted to Chapter 7 on November 16, 2001. On December 31, 2001, the TRUSTEE filed a partial abandonment, abandoning all scheduled assets except money in his possession, potential avoidance actions, unencumbered vehicles, income tax refunds, income earned while the DEBTOR was operating in Chapter 11, and any excess attorney fee retainer paid by the DEBTOR. Case Corporation and Case Credit Corporation (together referred to as "CASE"), the secured lender for the DEBTOR and its related corporations, filed a motion for relief from the stay to foreclose on its collateral, alleging that its debt exceeded twenty-one million dollars. In the motion, CASE asserts a valid and perfected blanket security interest in all the DEBTOR'S property, including general intangibles and contract rights. The order entered granting CASE'S motion specifically excepted property which the TRUSTEE had not abandoned.[2]

On November 14, 2003, more than two years after commencement of the case and more than one year after his appointment, the TRUSTEE filed a four count Complaint, seeking to avoid the transfers by the DEBTOR to the shareholders used to make payments to CHARLES G. WEST-

---

1. At the hearing, the TRUSTEE indicated that his information about the advances was obtained from the DEBTOR'S financial statements and he did not determine whether promissory notes were ever signed by the purchasing shareholders.

2. The argument made by KENT A. NIXON that the TRUSTEE abandoned the shareholder loan claims that he now seeks to recover is incorrect. There is no abandonment of unscheduled assets. *Jeffrey v. Desmond*, 70 F.3d 183 (1st Cir.1995); *In re Green*, 42 Fed.Appx. 815, 2002 WL 1750859 (7th Cir.2002). Those assets remain property of the estate. 11 U.S.C. § 554(d). In addition, although the loan claims are property of the estate under Section 541 and, as such, are subject to abandonment by the TRUSTEE, a trustee's avoidance actions, including those under Section 544(b), are not, technically, property of the estate and the concept of abandonment is inapplicable to them.

BAY under the purchase agreement. Counts I and II of the Complaint were brought under Section 548 of the Bankruptcy Code. Counts III (fraud in fact) and IV (fraud in law), were brought pursuant to Section 544(b) of the Bankruptcy Code, alleging avoidance claims under the Uniform Fraudulent Transfer Act (UFTA), as adopted in Illinois. Each DEFENDANT moved to dismiss the Complaint as untimely, relying on the statute of limitations contained in Section 546(a) of the Bankruptcy Code.[3] Before a hearing was held on those motions, the TRUSTEE filed a motion to amend his complaint, attaching a proposed First Amended Complaint ("Amended Complaint"), that reasserts the two UFTA counts, adds a new count for recovery of the balance due on the shareholder loans made by the DEBTOR and abandons the claims previously asserted under Section 548. Although not expressly designated as such, the loan recovery count is necessarily brought in the alternative to the fraudulent transfer theory. If the funds advanced to the shareholders were true loans that the shareholders were obligated to repay, then there was no fraudulent transfer.

In addition, in the Amended Complaint, the TRUSTEE proposes that if the UFTA claims are time-barred as to him by operation of Section 546(a), that CASE, as a creditor entitled to bring a still-timely UFTA claim by virtue of the longer limitations period provided in the state statute, be substituted as the real party in interest for the purpose of evading the bankruptcy time-bar in order to permit the continued prosecution of those claims "for the benefit of the estate." Specifically, Paragraph 5 of the Amended Complaint states as follows:

> Pursuant to § 323 of the United States Bankruptcy Code ("Code"), Richard E. Barber, not individually, but as Trustee for the estate of INTEGRATED AGRI, INC. is the representative of the estate herein and is the party in interest to prosecute this proceeding as party-plaintiff. Upon any determination that the state fraudulent transfer count in this amended complaint is barred by the limitations provision set forth in 11 U.S.C. § 546(a), then Case is the real party in interest and hereby gives notice of its ratification of the commencement and continued prosecution of this action by and in the name of the Trustee for the benefit of the estate and, in the alternative is hereby substituted and joins as party-plaintiff in those counts. The Trustee shall remain the party-plaintiff under all circumstances with respect to the remaining counts.

The TRUSTEE and CASE contend that this ratification or substitution by CASE is proper under Rule 7017 of the Federal Rules of Bankruptcy Procedure.

A hearing was held on the motions on February 17, 2004. At that hearing, the TRUSTEE conceded that the four counts brought in his original Complaint are time-barred as to him by operation of Section 546(a). Although none of the DEFENDANTS contended that Count I of the Amended Complaint, seeking payment of the balance due on the shareholder loans, is time-barred, Defendant KENT A. NIXON challenged the TRUSTEE'S pursuit of that claim on behalf of the unsecured creditors, asserting that CASE has a security interest in the monies owed by the share-

---

**3.** That section provides that actions under Sections 544 and 548 may not be commenced after the earlier of (1) the later of (A) 2 years after the entry of the order for relief, or (B) 1 year after the trustee's appointment (with inapplicable exception omitted), or (2) the time the case is closed or dismissed.

holders. CASE responded equivocally that it had not considered that its blanket security interest extended to the monies owed by the shareholders, representing that it had liquidated all of its collateral with the limited exception of certain accounts receivable and that its remaining claim consisted of its unsecured, deficiency claim.

In addition, all of the DEFENDANTS disputed the TRUSTEE'S assertion that his right to bring a UFTA action under Section 544(b) to avoid a fraudulent conveyance, time-barred as of October 23, 2003, "revested" in the DEBTOR'S creditors under state law. The Court took the pending motions under advisement, directing the TRUSTEE to submit authority and giving the DEFENDANTS an opportunity to respond. Each party filed a brief, with the TRUSTEE and CASE filing a joint brief.

Although the TRUSTEE has sought this Court's permission to amend his Complaint, by the filing of a motion, he need not have done so. Pursuant to Fed. R.Civ.P. 15(a), applicable to this adversary proceeding under Fed.R.Bankr.Proc. 7015, a plaintiff has the right to amend its complaint once at any time before a "responsive pleading" is filed by a defendant. A motion to dismiss is not a responsive pleading for purposes of Rule 15(a).

*Camp v. Gregory,* 67 F.3d 1286 (7th Cir. 1995). The parties have agreed, however, that the TRUSTEE'S ability to bring the three counts asserted in the Amended Complaint should be determined based upon the pending motions, notwithstanding that the DEFENDANTS have not yet pleaded in response to the Amended Complaint. The parties have briefed and argued the issues with that understanding.

### ANALYSIS

■ Notwithstanding the focus upon the UFTA counts, the Court considers it necessary to first address the issue which was raised at the hearing by KENT A. NIXON, regarding CASE'S secured status. KENT A. NIXON challenged the TRUSTEE'S claim under Count I of the Amended Complaint, for the balances due on the shareholder loans, asserting that the recovery is part of CASE'S collateral under its blanket security interest.[4] At the hearing, CASE tentatively denied having a security interest in the monies due the DEBTOR from the shareholders, stating that its amended proof of claim represents an unsecured claim with a limited exception for certain accounts receivable generated during the brief period the DEBTOR was operating in Chapter 11.[5] Counsel for the TRUSTEE indicated that he was uncertain of CASE'S possible interest. As KENT A. NIXON pointed out, if CASE

---

4. KENT A. NIXON couches the issue in terms of the TRUSTEE'S standing. This Court does not agree that the TRUSTEE lacks standing, but views the question as the proper exercise of his duties. Trustees have standing to bring actions to recover assets and prosecute claims of the debtor. Even if the asset or claim is encumbered by a creditor's unavoidable security interest, the trustee may properly seek recovery where there is a reasonable likelihood that the value of the recovery will exceed the allowed amount of the secured claim. Where there is clearly no equity in the asset or claim, however, it should be abandoned as having no value to the estate.

5. CASE filed an amended claim on August 8, 2003, as secured, however, describing its collateral as "substantially all assets/accounts receivable" and indicating the value of those assets as unknown. The total amount of its claim is shown as $9,828,027.44. The TRUSTEE filed a notice of his intent to abandon certain prepetition accounts receivable that he had collected and to pay over those funds to CASE. No objections were filed and an Order was entered on June 17, 2004, authorizing the abandonment and payment to CASE.

has a security interest in the loan balances, its security interest continues until it is unequivocally relinquished, regardless of CASE'S professed nonchalance concerning its existence.

According to the motion for relief from the stay filed by CASE, its security interest covers "substantially all of Debtors' personal property, including all inventory ... and all fixtures and equipment ... general intangibles; accounts; contract rights; chattel paper and instruments; and all additions and accessions to and all proceeds and products thereof ...." By referring to the definitions in the Uniform Commercial Code, the shareholder debt sought to be collected by the TRUSTEE may be classified either as an "instrument," if the shareholders executed promissory notes to the DEBTOR, or as a "general intangible." [6] CASE is admittedly undersecured by an amount that far exceeds the balance due on the shareholder loans.

██ It is critical that CASE'S interest be determined before the TRUSTEE is allowed to proceed on the note claim. It is well settled that it is improper for a bankruptcy trustee to liquidate property solely for the benefit of secured creditors. *In re Rambo*, 297 B.R. 418 (Bankr.E.D.Pa. 2003); *In re Pearson Industries, Inc.*, 178 B.R. 753 (Bankr.C.D.Ill.1995). Even acquiescence by the trustee does not transform the bankruptcy court into a collection forum for secured creditors. *In re Crisp*, 26 B.R. 274 (Bankr.W.D.Ky.1982). Fully encumbered property which has no poten-

tial equity for unsecured creditors should be abandoned. *Rambo, supra; In re Feinstein Family Partnership*, 247 B.R. 502 (Bankr.M.D.Fla.2000); *See, Standard Brass Corp. v. Farmers Nat. Bank of Belvidere*, 388 F.2d 86 (7th Cir.1967).

The Court is at a loss to explain CASE'S devil-may-care attitude with respect to its security interest. The noncommittal comments of CASE'S counsel, however, do not amount to an affirmative waiver of that potential interest. This Court will not permit this adversary proceeding to go forward on Count I of the First Amended Complaint until and unless CASE'S lien is released or avoided. CASE will be afforded an opportunity to release its security interest in the loans due from the shareholders. If it elects to do so, the viability of Count I of the Amended Complaint is established. If CASE chooses not to release its security interest, the TRUSTEE must then either abandon the estate's interest in the loan recovery claim, or commence an action to avoid the security interest.

██ The Court now turns to the second and third counts of the TRUSTEE'S amended complaint which assert the fraudulent transfer claims under state law. Those counts refer only to the UFTA, making no reference to any section of the Bankruptcy Code. It is clear, however, that the TRUSTEE does not have an independent right to assert a creditor's state-law fraudulent transfer claims. His only authority to do so is found in Section

---

**6.** An "instrument" is defined as "a negotiable instrument or any other writing that evidences a right to the payment of a monetary obligation, is not itself a security agreement or lease, and is of a type that in ordinary course of business is transferred by delivery with any necessary indorsement or assignment." 810 ILCS 5/9–102(47). The catch-all category of "general intangible" is defined to mean "any personal property, including things in action, other than accounts, chattel paper, commercial tort claims, deposit accounts, documents, goods, instruments, investment property, letter-of-credit rights, letters of credit, money, and oil, gas, or other minerals before extraction." 810 ILCS 5/9–102(42).

544(b) of the Bankruptcy Code. *See, In re Lucas Dallas, Inc.*, 185 B.R. 801 (9th Cir. BAP 1995). That provision gives a bankruptcy trustee whatever avoiding powers an unsecured creditor with an allowable claim might have under applicable state or federal law. *In re Marlar*, 267 F.3d 749 (8th Cir.2001). Accordingly, although Counts II and III of the amended complaint do not reference Section 544(b), this Court regards those counts as have been brought under that provision.

■ Recognizing that he cannot proceed under Section 544(b) in his own name alone due to the statute of limitations, the TRUSTEE contends that he may yet pursue the time-barred UFTA claims through the conduit of Section 544(b) based upon CASE'S substitution or ratification of those claims.[7] Rule 17 of the Federal Rules of Civil Procedure, made applicable in adversary proceedings in bankruptcy through Rule 7017 of the Federal Rules of Bankruptcy Procedure, provides that an action shall not be dismissed on the ground that it is not prosecuted in the name of the real party in interest, until the real party in interest has been allowed a reasonable time to ratify the commencement of, or join or substitute in, the action, in which event "such ratification, joinder or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest." Fed. R.Bankr.Proc. 7017(a). Often referred to as the "real party in interest rule," the primary purpose of Rule 7017 is to protect a defendant against a subsequent action by the party actually entitled to recover, and to insure, generally, that a judgment will have its proper *res judicata* effect. *Greer v. O'Dell*, 305 F.3d 1297 (11th Cir.2002). It is the means to identify the person who

possesses the rights sought to be enforced, the one who has a direct stake in the litigation. *Id.*

■ The real party in interest principle is typically raised defensively by a defendant who is concerned about the possibility of being subjected to a second suit brought by a person having a substantive interest in the cause of action who may claim not to be bound by the judgment in the first suit. *In re Unger & Associates, Inc.*, 292 B.R. 545 (Bankr.E.D.Tex.2003). Ratification, an alternative to formal joinder or substitution, is a mechanism to provide the defendant with the same protection of finality and *res judicata* that would have been achieved if the suit was brought by the ratifying party. *Jenkins v. Wright and Ferguson Funeral Home*, 215 F.R.D. 518 (S.D.Miss.2003). Where a suit is timely filed by one who stands in a representative capacity, the real party in interest is accorded an opportunity to substitute for the named plaintiff, or otherwise join or ratify the suit, thereby avoiding dismissal and preserving the timeliness of the filing. *See, In re Dygert*, 232 B.R. 155 (Bankr. D.Minn.1999). Proper ratification requires the ratifying party to authorize continuation of the action and agree to be bound by the result. *Naghiu v. Inter–Continental Hotels Group, Inc.*, 165 F.R.D. 413, 421 (D.Del.1996).

■ The analysis under Rule 7017 requires the Court to determine the identity of the real party in interest. A real party in interest is one who has substantive rights that may be enforced in the litigation. *U.S. v. Aetna Cas. & Sur. Co.*, 338 U.S. 366, 70 S.Ct. 207, 94 L.Ed. 171 (1949). The real party in interest determination turns upon whether the substantive

---

7. The TRUSTEE and CASE cite no authority where a court allowed substitution or ratification to be used to keep a trustee's action alive in bankruptcy court, where it was otherwise time-barred under Section 546(a).

law creating the rights being sued upon affords the party bringing suit a substantive right to relief. *Certain Interested Underwriters at Lloyd's, London, England v. Layne,* 26 F.3d 39 (6th Cir.1994). So, where the relief sought is money damages, a person entitled to receive a monetary award if the lawsuit is successful is a real party in interest.

A special provision exists for litigants whose right to sue derives expressly from a statute. Rule 17(a) provides that "a party authorized by statute may sue in that person's own name without joining the party for whose benefit the action is brought." Fed.R.Bankr.Proc. 17(a). Thus, an entity is a real party in interest in whose name a lawsuit may be prosecuted, when it is statutorily authorized to bring suit to enforce a claim. *In re Davis,* 194 F.3d 570 (5th Cir.1999). The statutory right to sue, of a kind sufficient to qualify a party as a real party in interest, must stem from the substantive law that controls the action, and may be granted by either state or federal law. *Id.*

Neither the TRUSTEE nor CASE suggests that, as a general rule, unsecured creditors are the real parties in interest with respect to any and all of the actions where a bankruptcy trustee is exercising avoiding powers on behalf of the estate. By negative implication, their contention is that the trustee's powers under Section 544(b)(1) are unique, being derived from an actual creditor's avoiding powers that exist under non-bankruptcy law. It follows, according to the TRUSTEE and CASE, that those actual creditors, not the trustee, are the real parties in interest in a trustee's action brought under Section 544(b)(1). This Court disagrees.

Bankruptcy trustees are expressly authorized to bring direct actions to avoid transfers voidable under applica-

ble state law. 11 U.S.C. § 544(b)(1). Although that power is activated only where there exists, as of the petition date, an actual unsecured creditor who could have brought the state law action, once activated, the power is exercisable by the trustee acting in his own name for the benefit of the bankruptcy estate. *In re DLC, Ltd.,* 295 B.R. 593, 601–02 (8th Cir. BAP 2003). *See,* 11 U.S.C. § 323 and Fed.R.Bankr. Proc. 6009. The fact that the TRUSTEE is acting for the benefit of the estate, and thus creditors, in no way defeats his status as the real party in interest. The real party in interest is the person holding the substantive right to be enforced, and not necessarily the person who will ultimately benefit from the recovery. *Wieburg v. GTE Southwest Inc.,* 272 F.3d 302, 306 (5th Cir.2001).

Moreover, the commencement of bankruptcy gives the trustee the right to pursue recovery of fraudulently conveyed assets to the exclusion of all creditors. *Klingman v. Levinson,* 158 B.R. 109, 113 (N.D.Ill.1993). A creditor who had the right to bring, outside of bankruptcy, a UFTA claim to recover prepetition transfers fraudulently made by the debtor, has no standing to commence or continue the suit during the bankruptcy case, until and unless the trustee relinquishes the Section 544(b) claim or the trustee no longer has a viable cause of action. *Id. See, also, Matter of Leonard,* 125 F.3d 543 (7th Cir.1997) (creditor who filed a prepetition UFTA suit against defendant who then filed Chapter 7, which suit was removed to bankruptcy court by the Chapter 7 trustee, had no continuing rights or interest in the suit and could not obtain stay relief or compel abandonment).

The landscape changes, however, once it is determined that the TRUSTEE'S claim is no longer viable. A creditor regains standing to pursue a state law

fraudulent conveyance action, in its own name and for its own benefit, once the statute of limitations expires on the bankruptcy trustee's right to bring the claim. *Klingman v. Levinson, supra.* At that point, the bankruptcy court ordinarily would have no jurisdiction to hear the creditor's suit to recover from a third party transferee and the suit must be filed or revived in a non-bankruptcy forum.

■■■■ It is also significant that the cause of action brought by a trustee pursuant to Section 544(b) based upon an actual creditor's rights under the UFTA is not identical to the UFTA claim that the creditor may bring in state court. Not only is the identity of the plaintiff, i.e., the one with standing to bring the claim, necessarily different, the applicable statutes of limitations are different and the allowable damages are different. A creditor bringing a UFTA claim in state court may only recover a sum capped by the amount of its own debt, while a bankruptcy trustee under Section 544(b) may recover the entire value of the avoided transfer, even if it far exceeds the amount of the debt owing to the actual creditor upon whose existence the trustee's rights rely. *In re Acequia, Inc.,* 34 F.3d 800 (9th Cir.1994). Furthermore, the TRUSTEE'S recovery is subject to distribution among all creditors holding allowed claims, not only those creditors who could have brought a prepetition UFTA suit.

It follows from this analysis that the respective rights of the TRUSTEE and CASE in the UFTA claims against the DEFENDANTS are mutually exclusive. Based upon the statutory authorization of Section 544(b), the TRUSTEE is the sole

real party in interest in this adversary proceeding. Neither CASE nor any other creditor has real party in ·interest status with respect to the assertion of the UFTA claims in bankruptcy.[8] Accordingly, CASE has no right of joinder, substitution or ratification with respect to the TRUSTEE'S cause of action. Rule 7017 is inapplicable and the TRUSTEE'S motion to amend, to the extent it seeks to permit CASE to substitute as the proper plaintiff or to ratify the time-barred UFTA claims asserted by the TRUSTEE, must be denied.

Even if ratification was proper here, Rule 17 protects against dismissal of a *timely* filed suit that is not brought in the name of the real party in interest. It is apparent that the TRUSTEE seeks to preserve his 544(b) action through the mechanism of Rule 7017, not by having CASE step into his shoes as the party-plaintiff subject to all of the rules applicable to such actions, but by creating a hybrid action that incorporates the longer state law limitations period while still retaining Section 544(b) as the jurisdictional basis for the suit. This approach is quite novel and wholly unsupportable. Substitution, joinder or ratification does not cure a fatal limitations defect or render Section 546(a) inapplicable. The TRUSTEE has given it the old college try but must resign himself to the unfortunate consequences of having missed the statutory deadline.

■■■ As for CASE, the Court cannot conceive of a good reason to explain why it chose to go along with this desperate attempt to save the TRUSTEE'S time-barred claim. It's option, all along, has been to seek to commence an original

---

8. It bears emphasizing here that CASE has no special or greater standing with respect to the UFTA claim than any of the DEBTOR'S other prepetition, unsecured creditors. CASE has not filed a UFTA suit and any actual creditor would be entitled to sue or join in a suit under the UFTA filed in state court. Hypothetically, if CASE was determined to be a real party in interest in the TRUSTEE'S suit, so the other creditors would also enjoy the same status.

UFTA claim in a non-bankruptcy forum, not to ratify a time-barred adversary proceeding. The TRUSTEE'S exclusive right to prosecute the UFTA action expires with the entry of this Opinion and Order. CASE and any of the DEBTOR'S creditors with standing under state law may now commence an original UFTA suit in an appropriate non-bankruptcy forum.[9] *See, Casey Nat. Bank v. Roan,* 282 Ill. App.3d 55, 668 N.E.2d 608, 218 Ill.Dec. 124 (Ill.App. 4 Dist.1996) (where Ch. 7 trustee did not pursue fraudulent transfer made by debtor to third parties, discharge of debtors' personal liability did not affect creditor's right to sue third parties to avoid transfer); *see, also, Kathy B. Enterprises, Inc. v. U.S.,* 779 F.2d 1413 (9th Cir.1986). Because it would not have any effect on the estate or the administration of this case, this Court would have no jurisdiction over such a suit.

One additional complicating factor must be addressed that arises out of the fact that the TRUSTEE'S cause of action asserted in Count I of the Amended Complaint, to collect the loans made to KENT A. NIXON, MICHAEL W. MAULSBY and STEVEN L. WESTBAY, and the UFTA claims against those same Defendants, are, as pointed out by MICHAEL W. MAULSBY and STEVEN L. WESTBAY, alternative theories of liability arising out of the same series of transfers, as to which the damages are identical. If brought in a single action, the prevailing Plaintiff would be allowed a single recovery, either on the note claim or one of the UFTA claims.

Because of the unusual way that this adversary proceeding is unfolding, Defendants KENT A. NIXON, MICHAEL W. MAULSBY and STEVEN L. WESTBAY may be subjected to a double recovery, based on inconsistent judgments, if the TRUSTEE is allowed to sue them to recover the loans in this Court and CASE or another of the DEBTOR'S prepetition, unsecured creditors sues them on the UFTA claims in state court.[10] If, however, CASE does not release its security interest and the TRUSTEE abandons the loan claim or fails to avoid CASE'S lien, this proceeding will be dismissed and the threat of duplicate liability arising from this adversary proceeding evaporates. Accordingly, this problem need not be addressed at this stage. If the Court permits the TRUSTEE to proceed on Count I of the Amended Complaint, it will have to be dealt with at that time.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

### ORDER

For the reasons stated in an Opinion filed this day, IT IS HEREBY ORDERED that

1. The Defendants' Motions to Dismiss the Complaint as time-barred are allowed and the Complaint is hereby dismissed.

2. The Plaintiff's Motion to Amend Complaint is denied as to Counts II and

---

**9.** In this corporate Chapter 7 case, the DEBTOR will not receive a discharge. The viability of creditor's rights against the DEBTOR or any third party is unaffected by this case and stay relief is not required to permit an action to be commenced against non-debtor third parties. Even where a debtor's personal liability for a debt is discharged, the discharge does not affect the liability of any other entity on, or the property of any other entity for, such debt. 11 U.S.C. § 524(e).

**10.** Since CHARLES G. WESTBAY is not a loan obligor, he is under no threat of duplicate liability.

III alleged in the Amended Complaint attached to the Motion.

3. The Court reserves ruling on the Plaintiff's Motion to Amend Complaint with respect to Count I of the Amended Complaint.

4. Case Corporation and Case Credit Corporation are given twenty-one (21) days to file a duly executed Release of security interest that releases any interest or claim those corporations have, if any, against Charles G. Westbay, Michael W. Maulsby, Kent A. Nixon and Steven L. Westbay, for repayment of loans made by the Debtor to each or any of them, whether or not such loans are evidenced by a writing.

5. The Clerk is directed to schedule a telephonic status hearing in this matter.