S05Q0587. BAILLIE LUMBER COMPANY v. THOMPSON et al.

(612 SE2d 296)

THOMPSON, Justice.

This case is before the Court on certified questions from the United States Court of Appeals for the Eleventh Circuit, as follows: (1) Will Georgia law allow the representative of a debtor corporation to bring an alter ego claim against the corporation's former principal? (2) If so, what is the measure of recovery? For the reasons which follow, we conclude that Georgia law does allow such a suit and that the measure of recovery against the corporation's former principal, upon a finding of liability, is the total of all debts of the corporation.

Bert F. Thompson ("Thompson") was the manager and sole shareholder of Piedmont Hardwood Flooring, LLC ("Piedmont"), a national manufacturer and distributor of hardwood flooring. Baillie Lumber ("Baillie") is an unsecured trade creditor of Piedmont that had sold lumber to the company but has not been paid.

After allegations surfaced that Thompson misappropriated Piedmont's assets to his own use, Thompson relinquished control of the company and divested himself from its management.[1] Shortly thereafter, Piedmont filed for bankruptcy protection under Chapter 11. Under the provisions of the Bankruptcy Code, Piedmont was allowed to operate its business as a debtor in possession,[2] and Icarus Holding LLC ("Icarus") was created to wind up the proceedings and to be a suable entity.

Following the bankruptcy filing, Icarus filed a complaint against Thompson in bankruptcy court asserting that Thompson's use of the company's assets constituted fraudulent transfers, and it sought to recover the misappropriated money. Soon after, Baillie filed suit against Thompson in Bibb County State Court alleging that Thompson is the alter ego of Icarus and thus personally liable for the debts owed to Baillie. Thompson sought injunctive relief in bankruptcy court to restrain Baillie from continuing the Bibb County action on the basis that the alter ego claim against him is the property of the

---

[1] Thompson allegedly engaged in financial irregularities that harmed the company's liquidity, such as the use of company assets and resources to make improvements to his personal hunting lodge, and to fund a separate company.

[2] A debtor in possession has essentially the same rights and duties as a trustee. 11 USC § 1107.

bankruptcy estate; that, therefore, only Icarus has standing to bring such a claim; and that Baillie has violated the automatic stay by prosecuting the state court action.[3] In support of these contentions, Thompson argued that Baillie is attempting to circumvent the bankruptcy laws by depriving other unsecured creditors of their pro rata share of any recovery from Thompson. The bankruptcy court agreed with Thompson and ruled that any alter ego claims by an unsecured creditor against the principal of a corporation were property of the bankruptcy estate, and therefore, subject to the automatic stay.[4] The district court adopted the decision and analysis of the bankruptcy court, concluding that under Georgia law, an alter ego claim may be asserted by a corporation, and when a corporation files for bankruptcy, any alter ego claims become property of the estate. Baillie appealed to the United States Court of Appeals for the Eleventh Circuit.

In certifying its questions to this Court, the Eleventh Circuit noted that Icarus must have standing to bring its own alter ego action in order to stay Baillie's state court proceeding. The Eleventh Circuit further determined that "in order to bring an exclusive alter ego action under section 541 [of the Bankruptcy Code], a bankruptcy trustee's claim should (1) be a general claim that is common to all creditors and (2) be allowed by state law." The Eleventh Circuit acknowledged that the first factor was satisfied here. However, the Court questioned the conclusion reached by the district court that Georgia courts would allow a corporation to bring an alter ego action against itself, and it certified that question of Georgia law to this Court.

1. Under the alter ego doctrine in Georgia, the corporate entity may be disregarded for liability purposes when it is shown that the corporate form has been abused.

In order to disregard the corporate entity because a corporation is a mere alter ego or business conduit of a person, it should have been used as a subterfuge so that to observe it would work an injustice. To prevail based upon this theory it is necessary to show that the shareholders disregarded the corporate entity and made it a mere instrumentality for the transaction of their own affairs; that there is such unity of interest and ownership that the separate personalities of the

---

[3] See 11 USC § 362 (a) (3) (petition operates as a stay of any act to obtain possession of property of the bankruptcy estate or to exercise control of property of the estate).

[4] Because the bankruptcy court determined that Baillie's state court suit was subject to the automatic stay, it found it unnecessary to issue a separate injunction.

corporation and the owners no longer exist. [Cit.] The concept of piercing the corporate veil is applied in Georgia to remedy injustices which arise where a party has over extended his privilege in the use of a corporate entity in order to defeat justice, perpetuate fraud or to evade contractual or tort responsibility.

(Citation and punctuation omitted.) *Heyde v. Xtraman, Inc.*, 199 Ga. App. 303, 306 (404 SE2d 607) (1991). See also *Kissun v. Humana, Inc.*, 267 Ga. 419, 419-420 (479 SE2d 751) (1997) (one type of abuse is when the corporate entity serves "as a mere alter ego or business conduit of another"); *Farmers Warehouse of Pelham v. Collins*, 220 Ga. 141, 150 (137 SE2d 619) (1964). "Plaintiff must show that the defendant disregarded the separateness of legal entities by commingling on an interchangeable or joint basis or confusing the otherwise separate properties, records or control. [Cits.]" (Punctuation omitted.) *Heyde*, supra at 306. See also *Paul v. Destito*, 250 Ga. App. 631, 639 (550 SE2d 739) (2001).

In general, equitable principles govern the alter ego doctrine. *Acree v. McMahan*, 276 Ga. 880, 882 (585 SE2d 873) (2003); *Kissun*, supra; *Hester Enterprises v. Narvais*, 198 Ga. App. 580, 581 (402 SE2d 333) (1991). "As a consequence, [a claim for piercing the corporate veil] is appropriately granted only in the absence of adequate remedies at law." *Acree*, supra at 883 (quoting *Floyd v. Internal Revenue Svc.*, 151 F3d 1295, 1300 (10th Cir. 1998)).

With these principles in mind, we turn to whether a corporation is entitled to recover from a principal under a veil-piercing theory. In *Pickett v. Paine*, 230 Ga. 786, 791 (199 SE2d 223) (1973), this Court stated a

reluctan[ce] to disregard the corporate entity except where third parties were involved in dealing with the corporation and director or shareholder liability was in question, *or where public policy might require looking beyond the corporate structure in the public interest.*

(Emphasis supplied.) The Court also acknowledged that the consequences of malfeasance on the part of a majority shareholder "may result in a loss of limited liability and render the participants personally liable for the obligations of the corporation." Id. However, the *Pickett* Court preserved the fiction of the corporate entity in that case because it concluded that a minority shareholder plaintiff had an adequate remedy by means of a shareholder's derivative action. Id. at 792 (1).

In subsequent decisions, our Court of Appeals has been reluctant to confine the doctrine of veil-piercing to third parties. For example, in *Paul v. Destito*, supra at 639, the Court of Appeals rejected a broad assertion that "in all cases, Georgia law prohibits a director, officer, or shareholder from piercing the corporate veil." See also *Cheney v. Moore*, 193 Ga. App. 312 (387 SE2d 575) (1989) (upholding trial court's directed verdict in favor of a 50 percent shareholder who sought to pierce the veil of a corporation that she had co-founded). Thus, it is clear that Georgia courts have extended the veil-piercing doctrine beyond traditional suits by a third-party creditor, to cases where application of the doctrine is necessary "to remedy injustices which arise where a party has over extended his privilege in the use of a corporate entity in order to defeat justice, perpetrate fraud or evade contractual or tort responsibility." (Punctuation omitted.) *Cheney*, supra at 312-313.

Through its automatic stay provisions, federal bankruptcy law seeks "to protect the debtor's assets, provide temporary relief from creditors, and further equity of distribution among the creditors by forestalling a race to the courthouse." *GATX Aircraft Corp. v. M/V Courtney Leigh*, 768 F2d 711, 716 (5th Cir. 1985). If the alter ego claim is property of the estate, all creditors are prevented by the automatic stay from prosecuting individual alter ego claims, thus affording equal treatment to all. To rule otherwise would allow a creditor to circumvent the bankruptcy process and would "undercut the general bankruptcy policy of ensuring that all similarly-situated creditors are treated fairly." *In the Matter of S. I. Acquisition*, 817 F2d 1142, 1153 (5th Cir. 1987).

Additionally, the usual requirement of third-party benefit for a veil-piercing claim is, in fact, met in the case of an insolvent corporation under federal bankruptcy law. In those circumstances, any alter ego claim asserted by the corporation itself will necessarily benefit third parties by providing more money with which to satisfy unsecured claims. See, e.g., *Corcoran v. Frank B. Hall & Co.*, 149 AD2d 165 (S. Ct. N.Y. 1989) (where corporation is insolvent, any suit by corporation's representative necessarily benefits creditors and not the company's shareholders).

The Court of Appeals for the Third Circuit explained the rationale for allowing a corporation to pierce its own veil:

> It may seem strange to allow a corporation to pierce its own veil, since it cannot claim to be either a creditor that was deceived or defrauded by the corporate fiction, or an involuntary tort creditor. In some states, however, piercing the corporate veil and alter ego actions are allowed to prevent unjust or inequitable results; they are not based solely on a

policy of protecting creditors. [Cits.] Because piercing the corporate veil or alter ego causes of action are based upon preventing inequity or unfairness, it is not incompatible with the purposes of the doctrines to allow a debtor corporation to pursue a claim based upon such a theory.

*Phar-Mor, Inc. v. Coopers & Lybrand*, 22 F3d 1228, 1240, n. 20 (3rd Cir. 1994). Also persuasive are the decisions of the federal bankruptcy courts within Georgia which have upheld a corporation's ability to assert an alter ego action. These decisions are predicated on the finding that equitable principles espoused in Georgia alter ego decisions merit the allowance of such a claim. See, e.g., *In re City Communications*, 105 B.R. 1018, 1022 (Bankr. N.D. Ga. 1989) ("emphasis under Georgia law appears to be equitable concerns rather that [sic] the specific relationships between the alter-ego and the creditors"); *In re Adam Furniture Indus.*, 191 B.R. 249, 254 (Bankr. S.D. Ga. 1996) (noting that under *City Communications*, supra and *Phar-Mor*, supra, Georgia courts would allow these claims). See also *In the Matter of S. I. Acquisition*, supra (under Texas law, an alter ego action was property of the bankruptcy estate, and any such suits by creditors ran afoul of the automatic stay). Compare *In re Rehabilitation of Centaur Ins. Co.*, 158 Ill.2d 166 (632 NE2d 1015) (1994) (holding that a corporation may not assert alter ego claim against its own shareholders but also reasoning that rehabilitator, unlike bankruptcy trustee, was not permitted by Illinois law to assert creditors' claims).

As we noted previously, Georgia alter ego law is not focused solely on the relationships between parties, but also is premised on equitable principles designed to prevent unjust treatment in appropriate circumstances. *Farmers Warehouse*, supra. We are convinced that this reasoning, when viewed in combination with the discussion above, compels that we recognize that in these circumstances, a corporation has a right to pursue an alter ego action. To fail to do so would result in potentially inequitable treatment of creditors under federal bankruptcy law.

Our conclusion is bolstered by two additional points. First, it is extremely unlikely that a corporation, outside of the bankruptcy context, would conclude that it is necessary to institute an alter ego action. Second, we are guided by the principle, as discussed above, that a claim for piercing the corporate veil is appropriately granted only in the absence of adequate remedies at law. *Acree*, supra. Thus, while an alter ego claim may be asserted by a corporation in an action against its principals, trial courts must not allow such claims when there are other appropriate remedies available to the corporation.

2. Baillie also argues that OCGA § 23-1-22 provides grounds for refusing to allow a corporation to assert an alter ego cause of action. That Code section provides that "[a] diligent creditor shall not needlessly be interfered with in the prosecution of his legal remedies." Baillie's assertion is that by recognizing that a corporation may pursue an alter ego action, its ability to assert the same cause of action is "interfered with" because it is taken away by the bankruptcy court. We find this argument unpersuasive. Key to this determination is the legislature's use of the word "needlessly." Baillie's remedy is not "needlessly" interfered with in the current situation. To the contrary, as discussed above, Baillie's remedy is only interfered with for the valid reason that in bankruptcy, all unsecured creditors are to be treated equally with regard to like claims. Baillie chose to deal with Piedmont on an unsecured basis. To allow Baillie to circumvent the bankruptcy process to the detriment of other unsecured creditors in like positions would be inequitable.

3. Having answered the Eleventh Circuit's first question in the affirmative, we now address the appropriate measure of recovery. An alter ego claim is an assertion that "there is such unity of interest and ownership that the separate personalities of the corporation and the owners no longer exist." *Farmers Warehouse*, supra at 150 (quoting Fletcher Cyclopedia Corporations, Vol. 1 § 41.1). Thus, it is readily apparent that where the corporate entity is disregarded, a principal found liable under an alter ego theory should be liable for the entirety of the corporation's debt.

*Questions answered. All the Justices concur.*

DECIDED APRIL 26, 2005.

*Sell & Melton, Ed S. Sell III, Tilman E. Self III*, for appellant.
*Jones, Cork & Miller, Hubert C. Lovein, Jr., Alston & Bird, Grant T. Stein, Sean C. Kulka, Troy J. Aramburu*, for appellees.
*Stone & Baxter, Ward Stone, Jr., George H. McCallum, Jr.*, amici curiae.