**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and BRANCH, J.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**July 16, 2013**

# In the Court of Appeals of Georgia

A13A0068. JOHNSON v. ALLIED RECYCLING, INC.

BRANCH, Judge.

Dana Johnson ("Dana")[1] brings this interlocutory appeal from the denial of her motion to dismiss the claims asserted against her by Allied Recycling, Inc. Dana contends that the trial court erred in denying her motion because Allied's claims against her are barred by the bankruptcy filing of one of her co-defendants, Demon Demo, Inc. Specifically, Dana argues that because Allied's complaint alleges the improper use of Demon Demo's assets, including the fraudulent transfer of those assets to her and/or her conversion of those assets to her personal use, Allied is not the

---

[1] To avoid any confusion with her husband, Donald Wayne Johnson, who is also a named defendant below, we refer to Mrs. Johnson as "Dana."

proper party to assert those claims. Rather, the claims belong to Demon Demo's trustee in bankruptcy. We disagree, and therefore affirm the order of the trial court.

"Because this appeal involves a question of law, we review both the record and the decision of the court below de novo." (Citation omitted.) *Outlaw v. Rye*, 312 Ga. App. 579, 580 (718 SE2d 905) (2011). And because this appeal involves a motion to dismiss, in analyzing the legal issue presented "we view all of [Allied's] well-pleaded material allegations as true, and view all denials by [Dana] as false, noting that we are under no obligation to adopt [either] party's legal conclusions based on these facts." (Citation omitted.) *Love v. Morehouse College*, 287 Ga. App. 743-744 (652 SE2d 624) (2007).

Taking all of the allegations in the complaint as true, the record shows that in 2006 Allied Recycling sued Demon Demo in DeKalb County Superior Court, seeking to recover for certain supplies and services it had provided to Demon Demo. On August 15, 2007, the DeKalb County court entered a consent order under which Demon Demo agreed to pay Allied $81,869.16, payable in monthly installments. After Demon Demo defaulted on these payments, Allied obtained a judgment against Demon Demo on May 22, 2009, in the amount of $60,119.16

In 2008, Allied filed suit against Demon Demo in the State Court of Gwinnett County, again seeking to recover payment for supplies and services it had provided to Demon Demo. On February 26, 2009, the Gwinnett County court entered a consent order under which Demon Demo agreed to pay Allied $33,000, payable in monthly installments. Demon Demo also defaulted on these payments, and on May 27, 2009, Allied obtained a judgment against Demon Demo in Gwinnett County in the amount of $31,750.

On April 7, 2009, shortly before Demon Demo defaulted on the payments due under the consent orders, the company's principal, Donald Wayne Johnson, registered a new corporate entity, DDI Companies, LLC, with the Georgia Secretary of State. Approximately 17 months after DDI came into existence, Demon Demo was administratively dissolved by the Georgia Secretary of State, based on the company's failure to pay and file its annual registration.

On August 9, 2011, Allied filed the current lawsuit in Hall County Superior Court against DDI, Donald Wayne Johnson, and an alleged co-conspirator identified only as Jane Doe. According to the complaint, DDI provides the exact same services

as Demon Demo[2] and uses the same telephone and fax numbers as Demon Demo. Additionally, the complaint asserts that any attempt to access the website for Demon Demo results in the user being automatically redirected to the website for DDI. The complaint also alleges additional facts showing that DDI simply stepped into the shoes of, and assumed the business of, Demon Demo, including the fact that DDI advertises itself as having been in business for over a decade; projects DDI advertises as having participated in or completed were, in fact, projects contracted for or performed by Demon Demo; and DDI's website specifically references the relationship between that entity and Demon Demo. Allied's original complaint asserted that Donald Wayne Johnson conspired to avoid Demon Demo's liability to Allied by transferring the assets of Demon Demo to himself and/or DDI and by commingling the assets of Demon Demo with his personal assets.

Allied filed an amended complaint on November 8, 2011, naming Demon Demo as an additional defendant and alleging that it had conspired with the other named defendants to transfer the company's assets and avoid its liability to Allied. On February 7, 2012, Donald Wayne Johnson filed a voluntary petition under Chapter 7

---

[2] DDI advertises itself as providing "Exterior and Interior Demolition, Abatements, Concrete Cutting and Removal, Building and Site Clearing." Demon Demo previously advertised itself as providing identical services.

of the Bankruptcy Code. Approximately two weeks later, Allied filed a notice of substitution, naming Donald Johnson's wife, Dana, as a defendant in lieu of Jane Doe. Allied then filed a second amended complaint, alleging that Dana had conspired with her husband, DDI, and Demon Demo to avoid Demon Demo's liability to Allied by having some of the corporate assets of Demon Demo transferred to her personally, and by otherwise unlawfully converting the corporate assets of Demon Demo and DDI to her personal use.

One month after Allied named Dana as a defendant, Demon Demo filed a Chapter 7 petition in bankruptcy. Dana filed a motion to dismiss Allied's claims against her, arguing that Allied was not the real party in interest as to any claim alleging fraudulent transfer of Demon Demo's property, as that claim belonged solely to Demon Demo's bankruptcy trustee. The trial court denied that motion, but granted Dana a certificate of immediate review. Dana then filed an application for an interlocutory appeal, which we granted. This appeal followed. After the case was docketed in this Court, Demon Demo's bankruptcy case was closed by order of the bankruptcy court.[3]

---

[3] Allied filed relevant documents from the bankruptcy court in the court below, and we granted Allied's motion to supplement the appellate record in this case with those documents. This Court may take judicial notice "of public records from other

The question before us is whether the claims against Dana may be brought by Allied, or whether those claims are the property of the bankruptcy estate, meaning that only the bankruptcy trustee may assert them. As noted above, the complaint asserts claims against Dana for conspiracy to defraud Allied, so as to prevent it from recovering on the judgments Allied obtained against Demon Demo. Allied seeks to recover for this fraud by requiring Dana to pay to Allied, in satisfaction of Allied's judgments against Demon Demo, the value of any assets or monies received, taken, or converted from that company. It also seeks to hold Dana personally liable for the judgments based on her participation in the fraudulent scheme to transfer assets away from the company and/ or under an "alter ego" theory of liability.[4] In other words, the

---

proceedings." (Punctuation and footnote omitted.) *Mosera v. Davis*, 306 Ga. App. 226, 230 (1) (701 SE2d 864) (2010). See also *Rothenberg v. Security Mgmt. Co.,* 667 F2d 958, 961, n. 8 (11th Cir.1982) (an appellate court may take "judicial notice of subsequent developments in cases that are a matter of public record and are relevant to the appeal") (citations omitted).

[4] To establish an alter ego cause of action in Georgia, or an action to "pierce the corporate veil," it must be shown that the shareholders of a corporation "disregarded the corporate entity and made it a mere instrumentality for the transaction of their own affairs; that there is such unity of interest and ownership that the separate personalities of the corporation and the owners no longer exist." (Citations and punctuation omitted.) *Baillie Lumber Co. v. Thompson*, 279 Ga. 288, 289-290 (1) (612 SE2d 296) (2005). This concept "is applied in Georgia to remedy injustices which arise where a party has over extended his privilege in the use of a corporate entity in order to defeat justice, perpetuate fraud or to evade contractual or tort responsibility." (Citation and

6

claims asserted against Dana by Allied fall into two categories: (i) claims seeking to void the transfer of Demon Demo's assets to Dana (the fraudulent transfer claims)[5]; and (ii) claims seeking to hold Dana personally liable for her conversion and/or misuse of Demon Demo's assets as well as her commingling of Demon Demo's assets with her own (the personal liability claims).[6] For the reasons explained below, we find that Allied, rather than the bankruptcy trustee, is the proper party to assert the

---

punctuation omitted.) Id. at 290 (1). Here, at the pleadings stage of the case, it is unclear whether or to what extent Dana has or had an ownership interest or managerial or other role in either Demon Demo or DDI.

[5] Although not pled specifically, it appears that Allied is asserting these claims under Georgia's Uniform Fraudulent Transfer Act, OCGA § 18-2-70, et seq.

[6] Although the personal liability claims appear to involve a taking or misuse of Demon Demo's assets for Dana's personal use, they do not necessarily involve an actual transfer of those assets to Dana. See *Maryland Cas. Ins. Co. v. Welchel*, 257 Ga. 259, 261 (356 SE2d 877) (1987) ("Conversion consists of an unauthorized assumption and exercise of the right of ownership over personal property belonging to another, in hostility to his rights; an act of dominion over the personal property of another inconsistent with his rights; or an unauthorized appropriation. . . . Consequently, in order to be chargeable with conversion, technically it is not necessary that the defendant assert any right of ownership over the property") (citations and punctuation omitted); *Levenson v. Word*, 294 Ga. App. 104, 106 (1) (668 SE2d 763) (2008). See also *Southwest Health & Wellness v. Work*, 282 Ga. App. 619, 625 (2) (b) (639 SE2d 570) (2006) (dealing with claims for misuse and waste of corporate assets that were not premised on the transfer (fraudulent or otherwise) of those assets.

7

fraudulent transfer claims. We also find that, given the facts alleged in the complaint, the trial court properly denied Dana's motion to dismiss the personal liability claims.

*The Fraudulent Transfer Claims*

1. Under Sections 544 and 548 of the Bankruptcy Code, the trustee has the exclusive right to pursue any claim that a creditor might have for the fraudulent or improper transfer of the debtor's property away from the debtor. See 11 USC § 544 (b) (1) ("the trustee may avoid any transfer of an interest of the debtor in property . . . that is voidable under applicable law by a creditor holding an unsecured claim"); 11 USC § 548 (a) (1) (A) ("[t]he trustee may avoid any transfer . . . of an interest of the debtor in property . . . that was made . . . on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily . . . made such transfer . . . with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made . . . , indebted"). See also *In re Adam Furniture Indus.*, 191 BR 249, 253 (Bankr. S. D. Ga., 1996) ("[t]he Bankruptcy Code provides a singular grant of power to the trustee to institute actions avoiding fraudulent and preferential transfers.") (citations omitted). The trustee possesses the right to assert these "avoidance" claims for only a limited time, however. Section 546 of the Bankruptcy Code provides, in relevant part, that any

8

cause of action for the voidable or fraudulent transfer of the debtor's assets must be brought before "the time the [bankruptcy] case is closed or dismissed." 11 USC § 546 (a)(2). Once this statute of limitation expires, "[a] creditor regains standing to pursue a state law fraudulent conveyance action, in its own name and for its own benefit." (Citations omitted.) *In re Integrated Agri*, 313 BR 419, 427-428 (Bankr. C. D. Ill., 2004). See also *In re Tessmer*, 329 BR 776, 779 (Bankr. M. D. Ga., 2005) (a creditor regains the right to sue under state law for the fraudulent transfer of a debtor's assets where the trustee "'no longer has a viable cause of action' because, for example, the statute of limitations has run") (quoting *In re Integrated Agri*, supra).

Here, Demon Demo's bankruptcy case began with the filing of its bankruptcy petition on April 3, 2012, and ended with the entry of the October 2, 2012 order closing that case. During that time, the bankruptcy trustee had the exclusive right to pursue an action seeking to recover fraudulently conveyed assets of the company, and Allied was stayed from pursuing such a claim on its own behalf. See, e.g, *Unisys Corp. v. Dataware Products*, 848 F.2d 311, 313 -314 (1st Cir. 1988); *In re Vandevort*, 2009 WL 7809927, *5-6 (9th Cir. BAP, 2009). Demon Demo's trustee, however, declined to pursue that claim during the pendency of the bankruptcy case.

9

Accordingly, once the case was closed, Allied regained its right to pursue that claim. *In re Tessmer*, supra at 779; *In re Integrated Agri*, supra at 427-428.

In an attempt to avoid this result, Dana argues that the fraudulent conveyance claim remains with the bankruptcy estate because the trustee did not abandon that claim under section 554 of the Bankruptcy Code. This argument is unavailing.

Section 554 provides:

(a) After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.

(b) On request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.

(c) Unless the court orders otherwise, any property scheduled under section 521 (a) (1)[7] of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title.

(d) Unless the court orders otherwise, property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate.

---

[7] That statute requires the debtor to file "a schedule of assets and liabilities." 11 USC §521 (a) (1) (B) (i).

10

11 USC § 554. Here, Dana argues that because the fraudulent conveyance claim was not scheduled by Demon Demo as an asset, and because the property was not otherwise administered, it remains with the estate. We disagree.

This argument, made by Dana in the supplemental brief she filed after the bankruptcy estate was closed, ignores the law holding that a fraudulent conveyance claim remains with the bankruptcy trustee only so long as the trustee has a viable cause of action, at which point the creditor regains the right to bring that claim.[8] *In re Tessmer*, supra at 779; *In re Integrated Agri*, supra at 427-428. Dana's argument also ignores the fact that section 554 deals with an entirely different subject matter than section 548. As noted above, section 554 provides that property (i.e., assets) must be scheduled by the debtor, and any such assets that the debtor fails to schedule will not be deemed abandoned back to the debtor upon the closing of the estate. Under section 554, "[t]he word 'scheduled' . . . has a specific meaning and refers only to assets listed in a debtor's schedule of assets and liabilities." (Citation and punctuation omitted.) *In re Kottmeier*, 240 BR 440, 443 (II) (M. D. Fla., 1999). Prior to the enactment of section 554 (c), any asset not administered by the trustee could be deemed abandoned

---

[8] Notably, Johnson acknowledged this law in her opening brief, filed while the bankruptcy case was still pending.

11

back to the debtor, even if the debtor had failed to inform the trustee that the asset existed. Id. ("[p]rior to the enactment of section 554 (c) such 'assumed abandonment' [of an undisclosed asset back to the debtor] was not impossible") (citations omitted). Thus, Congress amended section 554 in such a way that it now prevents debtors in bankruptcy from surreptitiously retaining assets, thereby avoiding having to forfeit those assets to their creditors. *In re McCoy*, 139 BR 430, 432 (Bankr. S. D. Ohio, 1991) If an unscheduled asset is discovered after the estate is closed, therefore, the trustee may petition to reopen the case for the purposes of administering that asset. Id.

As the foregoing demonstrates, the concept of abandoning estate property back to the debtor "is inapplicable to" actions to recover fraudulently conveyed estate property. *In re Integrated Agri*, supra at 422, n. 2. Indeed, Dana's argument that section 548 and 554 must be read together would render the statute of limitations imposed against bankruptcy trustees under section 548 meaningless. Under Dana's reasoning, a trustee could retain a fraudulent transfer action in perpetuity, and he could choose to assert it at any time by petitioning to reopen the estate. That simply is not the law. Instead, section 548 makes clear that fraudulent transfer actions are automatically available to the trustee for a certain period of time, after which they revert to the creditor, as opposed to the debtor. And section 554 does not provide any

12

mechanism which allows a trustee to interfere with the operation of section 548. Accordingly, because Demon Demo's bankruptcy has closed, the right to assert the fraudulent transfer claims at issue has reverted to Allied, and the trial court properly denied Allied's motion to dismiss.

*The Personal Liability Claims*

2. Under section 541 of the Bankruptcy Code, the bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 USC § 541 (a) (1). And such property includes any legal cause of action the debtor might have. *In re Icarus Holdings*, 290 BR 171, 175 (Bankr. M. D. Ga., 2002). The Bankruptcy Code is structured so as to preserve property of the bankruptcy estate and ensure that similarly situated creditors receive equal distributions. *S.I. Acquisition, Inc. v. Eastway Delivery Serv.*, 817 F2d 1142, 1152 (III) (5th Cir. 1987). Thus, if a cause of action belongs to the debtor, only the trustee may pursue it. *St. Paul Fire & Marine Ins. Co. v. PepsiCo*, 884 F2d 688, 701(2) (c) (2d Cir.1989). On the other hand, if a cause of action belongs to a creditor personally, the creditor is the proper party to pursue it; the trustee can only pursue claims that are "property of the estate." *In re Ozark Restaurant Equip. Co.,* 816 F2d 1222, 1225 (II) (A) (8th Cir. 1987). A claim is considered personal to the creditor where it is specific to that

13

creditor, as opposed to being a general claim, "common to all creditors." *In re Icarus Holding*, 391 F3d 1315, 1321 (II) (11th Cir. 2004). See also *Baillie Lumber Co.*, 279 Ga. at 289.[9]

In this case, the allegations of the complaint, together with the documents from the Bankruptcy Court, indicate that the tort claims asserted by Allied against Dana are personal to Allied; they are not general to all creditors. Allied is alleging that Dana acted in concert with her co-defendants to assist Demon Demo in avoiding its contractual liability (which had been reduced to money judgments) to Allied. The record shows that shortly after Demon Demo entered into two separate consent judgments with Allied, its principal formed DDI; following the formation of DDI, Demon Demo began winding down its operations and transferred its assets to Dana, Donald Johnson, and/or DDI; when Allied sued Donald Johnson and DDI, Donald Johnson responded by filing bankruptcy, in an apparent attempt to avoid personal

---

[9] In *Baille Lumber Co.*, the Georgia Supreme Court answered a certified question from the United States Court of Appeals for the Eleventh Circuit: whether Georgia law would allow a corporation to bring an alter ego action against itself? 279 Ga. at 289. The Supreme Court answered that question in the affirmative, and in doing so acknowledged the Eleventh Circuit's holding that under federal bankruptcy law, such a cause of action could belong to the trustee only where the claim is "'a general claim that is common to all creditors' . . . ." Id., quoting *In re Icarus Holding*, supra at 1321 (II).

14

liability; when Allied then named Demon Demo and Dana as defendants, Donald (and perhaps Dana) had Demon Demo file for bankruptcy (approximately 19 months after that company had been administratively dissolved); and shortly after Demon Demo filed bankruptcy, Dana filed her motion to dismiss, asserting that only Demon Demo's trustee in bankruptcy could recover corporate assets fraudulently transferred to her. These facts would support a finding that the defendants acted for the specific purpose of avoiding Demon Demo's liability to Allied, rather than to avoid Demon Demo's liability to all of its creditors, in general.

Furthermore, there is no evidence anywhere in the record, including in the documents from the Bankruptcy Court, showing that the Johnsons, DDI, or Demon Demo was being actively pursued for payment by any other creditor of Demon Demo. Under these particular circumstances, we find that the claims asserted by Allied against Dana, seeking to hold Dana liable for Demon Demo's debt to Allied, are personal to Allied, rather that general to all creditors. Accordingly, given the current evidence of record, we find that these claims are not the property of the bankruptcy

estate, and Allied is the proper party to bring them. The trial court, therefore, did not

err in denying Dana's motion to dismiss.[10]

*Judgment affirmed. Phipps, C. J., concurs. Ellington, P. J., concurs in judgment only..*

---

[10] We note, however, that because we are reviewing this case at the pleadings stage, Dana may still come forward with evidence that these claims are not personal to Allied. Should additional evidence be developed, the question of whether that evidence refutes the conclusion that the claims are personal to Allied, rather than common to all creditors, would be for the trial court to determine.