**FOURTH DIVISION**
**McFADDEN, C. J.,**
**DOYLE, P. J. and COOMER, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received** in our clerk's office within ten*
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 13, 2020**

# In the Court of Appeals of Georgia

A19A1702. LYLE et al. v. FULCRUM LOAN HOLDINGS, LLC et al.

DOYLE, Presiding Judge.

Plaintiffs Wayne Lyle and Charles Cary ("the plaintiffs") filed the instant case against defendants Liberty Capital, LLC; Hampton Island, LLC ("HI"); Fulcrum Loan Holdings, LLC; and Ronald S. Leventhal (collectively, "the defendants"), seeking the following relief: (1) to set aside a 2013 consent judgment approving the transfer of assets by Liberty and HI to Fulcrum, alleging that the lawsuit was collusive, fraudulent, and intended to shelter the assets from a separate judgment later obtained by the plaintiffs against Liberty; (2) fraudulent/voidable transfer; (3) constructive trust/attachment; (4) piercing the corporate veil; and (5) bad faith. The defendants

moved to dismiss the case on multiple grounds, and the trial court granted the motion. For the reasons that follow, we reverse.

The trial court granted the defendants' motion to dismiss the complaint for failure to state a claim under OCGA § 9-11-12 (b) (6).[1] Such a motion

> should not be sustained unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought. In deciding a motion to dismiss, all pleadings are to be construed most favorably to the party who filed them, and all doubts regarding such pleadings must be resolved in the filing party's favor.[2]

---

[1] Because the plaintiffs' brief opposing the motion to dismiss exhibited materials outside the pleadings, and the trial court's order recites that it "consider[ed] the submissions of the parties and arguments of counsel and party pro se," we must determine whether the motion was converted to one for summary judgment. See *Thompson v. Avion Systems*, 284 Ga. 15, 16-17 (663 SE2d 236) (2008). We conclude that it was not. The order, which cites only to the plaintiffs' complaint, taken as a whole, reflects that the trial court did not consider those exhibits.

[2] (Citation and punctuation omitted.) *Austin v. Clark*, 294 Ga. 773, 774-775 (755 SE2d 796) (2014).

2

In other words, "[t]his [C]ourt reviews a trial court's ruling on a motion to dismiss de novo, viewing as true all well-pleaded material allegations in the complaint."[3]

So construed, the allegations in the complaint stated that the plaintiffs are judgment creditors of Liberty. Before the plaintiffs obtained their judgment, Liberty's sole owner, Leventhal, took steps to transfer Liberty's assets away from that entity and into Fulcrum, another entity that he owned and controlled. Leventhal did so with the purpose of defeating Liberty's creditors, including the plaintiffs.

To that end, Leventhal had Liberty file a complaint in the Superior Court of Fulton County against HI, another entity that he owned and controlled. Leventhal verified that complaint, which contained material allegations that were untrue, and concealed the fact that he owned and controlled both the plaintiff and defendant entities. Among other things, Liberty's complaint alleged that HI was in default on notes in favor of Liberty, was likely to refuse to pay rents to Liberty, and was likely to waste Liberty's collateral on the notes, real property in which Liberty had a secured interest.

---

[3] *Villa Sonoma at Perimeter Summit Condo. Assn. v. Commercial Indus. Bldg. Owners Alliance*, 349 Ga. App. 666, 667 (1) (824 SE2d 738) (2019).

3

Liberty convinced the Fulton County court to appoint a receiver, which Leventhal or his representatives selected and engaged. Leventhal or his representatives also served as the receiver's sole source of information and provided the receiver with untrue information about HI's alleged default and likely wasting of Liberty's collateral. To satisfy HI's debt to Liberty, the receiver authorized a foreclosure and sale of the collateral, which was sold to Fulcrum for $50,000, a "fraction of its worth" and an amount significantly less than the amount Liberty owed to the plaintiffs pursuant to their judgment against Liberty. Liberty and HI obtained a consent judgment from the Fulton County court approving this transfer.

The plaintiffs filed the instant case against Liberty, HI, Fulcrum, and Leventhal, seeking the following relief: setting aside the consent judgment; fraudulent/voidable transfer; constructive trust/attachment; piercing the corporate veil; and bad faith. The defendants moved to dismiss the complaint in its entirety on multiple grounds, including that it was untimely and failed to state a claim, and the trial court granted the motion. This appeal followed.

1. *Challenge to the consent judgment*. The plaintiffs allege that the trial court erred by dismissing their challenge to the prior consent judgment. We agree.

The plaintiffs sought to set aside the prior consent judgment under OCGA § 9-11-60 and to attack the judgment as the result of the defendants' fraud and collusion under OCGA § 9-12-17. Their challenge under OCGA § 9-11-60 is without merit. They cannot proceed under OCGA § 9-11-60 (a) because their challenge to the judgment, as they have alleged it in their complaint, was not a defect that would have "appear[ed] on the face of the record or pleadings."[4] They cannot proceed under OCGA § 9-11-60 (b) because that subdivision concerns only motions for new trial or to set aside, not complaints asserting the challenge as a cause of action. "A third person not a party to the record cannot go into a court and move to set aside a judgment which is not against him" under this Code section.[5]

Thus, while the trial court properly analyzed the motion under OCGA § 9-11-60, it erred by dismissing the plaintiffs' challenge to the consent judgment under OCGA § 9-12-17, which permits "[c]reditors or bona fide purchasers [to] attack a judgment . . . for fraud or collusion, whenever and wherever it interferes with their

_____

[4] (Citation omitted.) *Lawing v. Erwin*, 251 Ga. 134, 135 (303 SE2d 444) (1983).

[5] (Citations and punctuation omitted.) *Peek v. Southern Guar. Ins. Co.*, 142 Ga. App. 671, 672 (1) (236 SE2d 767) (1977), rev'd on other grounds, *Peek v. Southern Guar. Inc. Co.*, 240 Ga. 498, 499-500 (1) (241 SE2d 210) (1978).

rights, either at law or in equity."[6] We find meritless the defendants' argument that the procedures in OCGA § 9-11-60 of the Civil Practice Act superseded those in OCGA § 9-12-17. Although OCGA § 9-11-60 (a) provides that "[i]n all . . . instances [other than when a judgment is void on its face], judgments shall be subject to an attack only by a direct proceeding brought for that purpose in one of the methods

---

[6] We note that in their complaint, the plaintiffs sought to set aside the consent judgment based solely on OCGA § 9-11-60, without citation to OCGA § 9-12-17, a fact that complicated the trial court's analysis when deciding the motion to dismiss. The plaintiffs did, however, assert OCGA § 9-12-17 in response to the motion to dismiss. And more importantly, they allege in the complaint that Leventhal, Liberty, and HI employed "fraud, deception, and collusion" to convince the Fulton county court to execute the consent judgment, and they list ten "direct and false representations made by Leventhal under oath" in pleadings to that court.

> [T]he Georgia Civil Practice Act requires only notice pleading and, under the Act, pleadings are to be construed liberally and reasonably to achieve substantial justice consistent with the statutory requirements of the Act. Thus, a motion to dismiss for failure to state a claim should not be granted unless the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof. Put another way, if, within the framework of the complaint, evidence may be introduced which will sustain a grant of relief to the plaintiff, the complaint is sufficient.

(Punctuation omitted.) *Campbell v. Ailion*, 338 Ga. App. 382, 384-385 (790 SE2d 68) (2016). Here, because the allegations of the complaint gave the defendants fair notice that the plaintiffs sought to set aside the consent judgment based on fraud and collusion, their failure to specifically cite OCGA § 9-12-17 is not fatal to their claim. See id.

6

provided in [OCGA § 9-11-60]," Georgia courts have recognized OCGA § 9-12-17 as a "statutory exception" to this provision.[7] And when our General Assembly chose to re-codify OCGA § 9-12-17 in 1983, it did so in light of both the set-aside procedures of what is now codified as OCGA § 9-11-60 and the Georgia decisions recognizing the statutory exception to those procedures. The General Assembly is presumed to have had full knowledge of this interpretation when it re-codified OCGA § 9-12-17.[8]

"At this time, it cannot be said that the allegations of the complaint disclose with certainty that [the plaintiffs] would not be entitled to [the] relief [described in OCGA § 9-12-17] under *any* state of provable facts asserted in support."[9] To the contrary, the plaintiffs alleged that the defendants worked together to mislead both

---

[7] See *Wasden v. Rusco Indus.*, 233 Ga. 439, 444 (2) (211 SE2d 733) (1975) (including predecessor to OCGA § 9-12-17 as one of the "statutory exceptions" to procedures of predecessor to OCGA § 9-11-60), overruled in part on another ground by *Murphy v. Murphy*, 263 Ga. 280, 283 (430 SE2d 749) (1993); *Albitus v. Farmers & Merchants Bank*, 159 Ga. App. 406, 409 (2) (283 SE2d 632) (1981) (same).

[8] See generally *First Nat. Bank of Atlanta v. Sinkler*, 170 Ga. App. 668, 670 (1) (317 SE2d 897) (1984) ("it is well settled in this jurisdiction that all statutes are presumed to be enacted by the legislature with full knowledge of the existing condition of the law and with reference to it") (citations and punctuation omitted).

[9] (Emphasis in original.) *Austin*, 294 Ga. 775.

the Fulton County court and the receiver appointed by that court in order to obtain a transfer of real property (in which Liberty possessed a secured interest) to Fulcrum at a fraction of its value so that those assets could not be used to satisfy Liberty's obligations to its creditors. Whether the plaintiffs ultimately will be able to prove their allegations is not relevant at this stage in the proceedings. Any "factual evidence [on that point] which may or may not be developed during discovery . . . can be considered on a subsequent motion for summary judgment."[10] Therefore, the trial court erred in dismissing this claim.

2. *Claim for fraudulent transfer*. The plaintiffs also argue that the trial court erred by dismissing their claim for fraudulent transfer. We agree.

The plaintiffs seek to void the transfer of assets to Fulcrum pursuant to OCGA § 18-2-70 et. seq. The version of that statute in effect at the time of the 2013 transfer permits a creditor to bring an action for relief against a fraudulent transfer, OCGA § 18-2-77 (a) (2013), and it provides, among other things, that "[a] transfer made . . . by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the

_____

[10] Id.

8

transfer or incurred the obligation . . . [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor[.]"[11]

As we concluded with regard to the plaintiffs' challenge to the consent judgment, "[a]t this time, it cannot be said that the allegations of the complaint disclose with certainty that [the plaintiffs] would not be entitled to [the] relief [provided for in OCGA § 18-2-70 et seq. (2013)] under *any* state of provable facts asserted in support."[12] The complaint alleged that the plaintiffs are creditors with claims against Liberty.[13] And the complaint alleged that, with intent to defraud its creditors, Liberty took steps to have the real property in which it held security interests transferred to Fulcrum through the bankruptcy sale. The statute broadly defines "transfers" to include "every mode, direct or indirect, absolute or conditional,

---

[11] OCGA § 18-2-74 (a) (1) (2013).

[12] (Emphasis in original.) *Austin*, 294 Ga. at 775.

[13] See OCGA § 18-2-71 (3) (2013) (defining "claim" to be "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured"); OCGA § 18-2-71 (4) (2013) (defining "creditor" to be "a person who has a claim").

voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset. . . ."[14]

Given the breadth of these definitions, we are not persuaded by the defendants' argument that the plaintiffs lack standing because the foreclosure sale did not transfer assets of their debtor, Liberty. We are also unpersuaded by their argument that Liberty's security interest in the real property, as described in the complaint allegations, is excluded from the statute's definition of "asset."[15] It is simply too soon in this case to conclude, as a matter of law, that the plaintiffs cannot present evidence satisfying these statutory elements. Finally, we find meritless the defendants' argument that the statute of limitation has expired on this claim. The complaint alleges the fraudulent transfer to be the bankruptcy sale to Fulcrum, which occurred on October 1, 2013.[16] The plaintiffs filed their complaint on September 22, 2017, within the four-year limitation period set forth in OCGA § 18-2-79 (1) (2013).

---

[14] OCGA § 18-2-71 (12) (2013).

[15] See OCGA § 18-2-71 (2) (2013) ("'Asset' means property of a debtor, but the term does not include: (A) Property to the extent it is encumbered by a valid lien; (B) Property to the extent it is generally exempt under nonbankruptcy law; or (C) An interest in property held in tenancy by the entireties to the extent it is not subject to process by a creditor holding a claim against only one tenant.").

[16] See OCGA § 18-2-76 (1) (A) (2013) (stating when transfer is made).

10

Accordingly, the trial court erred by dismissing the plaintiffs' claim for fraudulent transfer.

4. *Claim for constructive trust.* The plaintiffs further contend that the trial court erred by dismissing their claim for a constructive trust. Again, we agree.

The plaintiffs allege that pursuant to OCGA § 53-12-132, they have a constructive trust on the assets transferred to Fulcrum. That Code section provides that "[a] constructive trust is implied whenever the circumstances are such that the person holding legal title to property, either from fraud or otherwise, cannot enjoy the beneficial interest in the property without violating some established principle of equity."[17] It arises "by equity with respect to property acquired by fraud, or although acquired without fraud where it is against equity that the property should be retained by the one who holds it."[18] It is true "that a claim for the imposition of a constructive trust is not an independent cause of action. In this case, however, [the plaintiffs] have sufficiently alleged a supporting cause of action[, the fraud discussed above]."[19]

---

[17] OCGA § 53-12-132 (a).

[18] *Aetna Life Ins. Co. v. Weekes*, 241 Ga. 169, 172 (1) (244 SE2d 46) (1978) (construing predecessor statute).

[19] *Morrison v. Morrison*, 284 Ga. 112, 113 (1) (663 SE2d 714) (2008).

Because evidence could show within the framework of the complaint that would permit the imposition of a constructive trust over assets transferred to Fulcrum, the trial court erred by dismissing this claim.

5. *Claim for piercing the corporate veil.* The trial court also erred by dismissing the plaintiffs' claim that the corporate veil between Leventhal and the defendant entities was pierced.

"Under the alter ego doctrine in Georgia, the corporate entity may be disregarded for liability purposes when it is shown that the corporate form has been abused."[20] In their complaint, the plaintiffs alleged facts that, taken as true, show that Leventhal abused the corporate form of the defendant entities: that he disregarded corporate formalities; intermingled corporate and personal funds, staff, and property; undercapitalized the entities to avoid creditors; used corporate funds to pay individual obligations; and siphoned off corporate funds for himself, his family, and other entities he controls. While the defendants

> are correct that to the extent [the plaintiffs] seek to reach the assets of [the defendant entities] for any judgment debt personally incurred by [Leventhal] under the theory of outsider reverse veil-piercing, such a

---

[20] *Baillie Lumber Co. v. Thompson*, 279 Ga. 288, 289 (1) (612 SE2d 296) (2005).

12

claim is foreclosed by Georgia law. However, construed in the light most favorable to [the plaintiffs] with all doubts resolved in their favor, [their] complaint state[s] a claim for holding [Leventhal] liable for any judgment debt incurred by [the defendant entities] under a veil-piercing theory[.][21]

Thus, the trial court erred by dismissing this claim.

6. *Bad faith*. Finally, the trial court erred by dismissing the plaintiffs' claim for attorney fees and expenses under OCGA § 13-6-11.

In support of this claim, the plaintiffs alleged that the defendants have acted in bad faith, been stubbornly litigious, and caused unnecessary trouble and expense. These allegations are sufficient to state a claim under OCGA § 13-6-11.[22] Accordingly, the trial court erred by dismissing this claim.

*Judgment reversed. McFadden, C. J., and Coomer, J., concur.*

---

[21] (Citations omitted.) See *TMX Finance, LLC v. Goldsmith*, 352 Ga. App. 190, 211 (6) (833 SE2d 317) (2019).

[22] See *Siavage v. Gandy*, 350 Ga. App. 562, 567 (3) (829 SE2d 787) (2019).